*In re* MARRIAGE OF VIRGINIA L. HAGAMAN, Petitioner-Appellee, and DONALD E. HAGAMAN, Respondent-Appellant.

Fourth District   No. 4—84—0072

Opinion filed April 25, 1984.

Charles H. Delano, of Delano Law Offices, P.C., of Springfield, for appellant.

John R. Keith, of Holley, Keith & Mehlick, of Springfield, for appellee.

JUSTICE TRAPP delivered the opinion of the court:

The parties were married on July 1, 1972. On October 4, 1983, Virginia Hagaman filed a petition for dissolution of marriage. On November 29, 1983, the trial court found grounds for dissolution, reserving questions of property disposition. In the interim, the parties continued residing together at the marital residence. On December 8, 1983, Virginia Hagaman filed a petition for an order of protection pursuant to section 101 *et seq.* of the Illinois Domestic Violence Act (Ill. Rev. Stat. 1983, ch. 40, par. 2301—1 *et seq.*). After hearing on December 9, 1983, the trial court (1) found that respondent had engaged in abuse within the meaning of the Act, (2) entered an order of protection in favor of petitioner and her daughter by a previous marriage, (3) awarded petitioner exclusive possession of the marital residence, and (4) entered a finding that there was no reason to delay enforcement of an appeal (87 Ill. 2d R. 304(a)). The trial court denied respondent's motion to reconsider pursuant to section 2—1203 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1203). Respondent appeals from the judgment of the circuit court of Sangamon County. While the notice of appeal is labeled as an interlocutory appeal from an injunction, in such form the notice is untimely. However, this court has jurisdiction under Supreme Court Rule 304(a) (87 Ill. 2d R. 304(a)).

Respondent raises five issues on appeal: (1) whether the record supports a finding of abuse as defined in section 103(1) of the Act (Ill. Rev. Stat. 1983, ch. 40, par. 2301—3(1)); (2) whether the statutory definition of "abuse" under section 103(1) is so unclear as to violate his due process rights; (3) whether the order was improper since the court did not make the findings required by section 208(d)(1) of the Act (Ill. Rev. Stat. 1983, ch. 40, par. 2302—8(d)(1)); (4) whether he was improperly prevented from inquiring or commenting on the frequency, severity, pattern, and consequences of his past abuse of family members; and (5) whether the court erred in granting petitioner exclusive possession of the residence for one year or until conclusion of the dissolution proceedings.

At the outset we note that respondent's brief presents a rather selective recitation of the facts and is not in compliance with Supreme Court Rule 341(e)(6) (87 Ill. 2d R. 341(e)(6)), which requires that facts necessary to an understanding of the case be set forth accurately and fairly.

Testimony presented at the December 9 hearing is briefly summarized here. Petitioner's 19-year-old daughter by a previous marriage testified that she had been awakened around midnight on December 7, 1983, by a discussion between the parties in their bedroom across the hall. She heard her mother inquire why the November mortgage payment had not been made. Respondent commenced making remarks about petitioner's family. Petitioner responded by defending her family and referring to respondent in unflattering terms. Respondent left the parties' bedroom, entered the daughter's room and asked her to tell her mother to leave him alone. The daughter screamed at respondent to leave her alone and turned over. Respondent grabbed the daughter by the feet and dragged her from her bed through the hallway and into the living room. The daughter (five feet tall and 98 pounds) struggled with respondent (5 feet 9 inches tall and 190 pounds), hitting, scratching and kicking him. Petitioner tried to pull respondent away from her daughter. Respondent started to throw the daughter out of the house in her pajamas. The daughter stated she was going to call the police. Respondent told her to go ahead but knocked her head against the kitchen wall by the phone four times. After she called the police, she cursed at respondent and he slapped her.

The daughter testified that respondent had never hit her before. She said her mother had often called respondent names during arguments and that on occasion, respondent had locked himself in the basement or a bedroom at such times. She said respondent had hit petitioner about a year earlier and that she had seen him hit petitioner eight or 10 times over an 11-year period.

Virginia Hagaman testified that respondent had returned home on December 7 around midnight. Her inquiry on the house payment led to a 15- to 20-minute verbal argument. When respondent dragged her daughter to the front room, petitioner (5 feet 3 inches tall and 110 pounds) tried to pull respondent away from her. Respondent knocked petitioner away by throwing his arm back. Petitioner testified that her daughter and respondent tussled at the telephone in the kitchen while she tried to call her other daughter from her bedroom.

Petitioner acknowledged that respondent had not beaten or hit her daughter previously. She said respondent had only beaten her, pe-

titioner, one time more than eight or nine years earlier. She stated respondent had hit and shoved her numerous times since then, including an incident within the previous year when he shoved her out the back door and hit her with his fist. She had been bruised in such incidents a couple of times in the past five years. Petitioner testified she had also seen respondent engage in acts of physical violence directed at a nonfamily member. She said she was afraid of respondent.

Don Hagaman testified that he had returned home after drinking at around 10:45 p.m. on December 7, 1983. In the midst of arguing with petitioner, he had requested that her daughter intercede. Instead the daughter cursed him from her bed. He dragged her to the living room by her feet and left her there. As he walked to the kitchen, both petitioner and her daughter began hitting him. The trial judge observed scratches on the right side of respondent's face.

Respondent testified that he had slapped petitioner once years earlier when she had taken an overdose, but had otherwise never slapped, hit, shoved, or beaten her. On cross-examination, respondent acknowledged that he had backhanded petitioner once more than eight years earlier. Asked whether there could have been other times he had hit petitioner which he did not recall, respondent answered, "There was one time at the tavern and one other time." Respondent also acknowledged that he had told petitioner during the previous six months that if she did not do his laundry, the washing machine would not work.

The trial judge found that although the events of December 7 had not been extremely violent and had not caused great bodily harm, the facts presented a domestic situation within the purview of the Illinois Domestic Violence Act. The court found that petitioner had been abused and that there had been threats, harassment, and interference with her living. The court therefore entered the protective order which is the subject of this appeal.

■■ Respondent's first argument on appeal is that the evidence did not establish he committed abuse within the meaning of the Act. Section 103(1) states:

" 'Abuse' means the act of striking, threatening, harassing or interfering with the personal liberty of any family or household member by any other family or household member, but excludes any reasonable discipline of a minor child by a parent or person in loco parentis of such minor child." (Ill. Rev. Stat. 1983, ch. 40, par. 2301—3(1).)

Upon review of the record we find that there was testimony to support a finding of abuse within the meaning of the statute.

We do not find persuasive respondent's citation of section 701 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 701) or *In re Marriage of Hofstetter* (1981), 102 Ill. App. 3d 392, 430 N.E.2d 79. As the Historical and Practice Notes on section 701 state, the Illinois Domestic Violence Act provides a concurrent remedy to that available under section 701, and the definition of abuse under the Act differs substantially from the test contained in section 701. Section 701 refers to the " '*** physical or mental well being of either spouse or their children [being] jeopardized by occupancy of the marital residence by both spouses.' " (Ill. Ann. Stat., ch. 40, par. 701 (Smith-Hurd Supp. 1983).) Further, the extreme facts present in *Hofstetter* need not be present to justify relief under either the Illinois Domestic Violence Act or section 701 of the Illinois Marriage and Dissolution of Marriage Act.

■ Respondent's second contention of error is that the statutory definition of abuse (Ill. Rev. Stat. 1983, ch. 40, par. 2301—3(1)) is so unclear as to violate his due process rights. We note that the standards in assessing the vagueness of a statute differ between penal statutes (see, *e.g., Connally v. General Construction Co.* (1925), 269 U.S. 385, 70 L. Ed. 322, 46 S. Ct. 126) and those which are nonpenal in nature. We find the standard enunciated in *In re Marriage of Thompson* (1979), 79 Ill. App. 3d 310, 398 N.E.2d 17, to be applicable here:

"Yet it is only where a statute is so indefinite and uncertain that courts are unable to determine what the legislature intended, or where the statute is so incomplete or inconsistent that it cannot be executed, that the law will be invalidated by reason of indefiniteness or uncertainty. (*Tometz v. Board of Education* (1968), 39 Ill. 2d 593, 237 N.E.2d 498; *People ex rel. Drobnick v. City of Waukegan* (1954), 1 Ill. 2d 456, 116 N.E.2d 365.) Due process is not a fixed concept unrelated to time, place and circumstances. (*Andrews v. County of Madison* (1977), 54 Ill. App. 3d 343, 369 N.E.2d 532.) Rather, it is a flexible concept and requires a consideration of the legislative objective and purpose in determining whether a statute is unconstitutionally vague. *People v. Schwartz* (1976), 64 Ill. 2d 275, 356 N.E.2d 8; *People v. Dednam* (1973), 55 Ill. 2d 565, 304 N.E.2d 627." 79 Ill. App. 3d 310, 314, 398 N.E.2d 17, 21.

The purpose of the Illinois Domestic Violence Act, set forth in section 102 (Ill. Rev. Stat. 1983, ch. 40, par. 2301—2), is to expand the civil and criminal remedies for victims of domestic violence including, if necessary, the physical separation of the parties to prevent further abuse. Section 102 recognizes that domestic violence and family

disharmony often involve a pattern of escalating violence. The Act provides a statutory framework for effecting a brake on that escalation and, as such, is to be liberally construed. While the statutory definition of abuse encompasses a broad range of conduct, we conclude it is not so unclear that courts are unable to determine the legislature's intent.

It is for the trial court, in its broad discretion, to determine on a case-by-case basis whether there has been abuse. The trial judge must assess the credibility of the witnesses, the acts and statements described, and the tension between household members. In so doing, the trial judge necessarily considers the potential for further abuse. Respondent was afforded notice and hearing as required by the statute and we find no abuse of his due process rights.

■■ Respondent further argues that the protective order was improper because the trial court did not make the findings required by section 208(d)(1) of the Act. That section provides:

"In determining whether to grant a specific remedy in an order of protection, the court shall consider relevant factors, including but not limited to the following, and shall make findings thereon:

(1) the frequency, severity, pattern and consequences of the respondent's past abuse of the petitioner or any family or household members, including the concealment of his or her location in order to evade service of process or notice, and the likelihood of danger of future abuse to the petitioner or any family or household members." (Ill. Rev. Stat. 1983, ch. 40, par. 2302—8(d)(1).)

While a reviewing court finds a statement of reasons by the trial court highly preferable and of assistance in focusing the issue, where, as here, the record supports the trial court's finding of abuse within the meaning of section 103(1) of the Act, a reviewing court will not overturn the court's order solely for the reason that the trial judge did not make specific findings on the factors referenced in section 208(d)(1) of the Act.

■■ Respondent's fourth argument is that he was improperly prevented from inquiring or commenting on the frequency, severity, pattern, and consequences of his past abuse of family members. Respondent specifically references only three incidents. Each of these, the first in opening statement and the latter two in questioning of petitioner's daughter, reflects an effort by the trial court to control the proceeding. Although it is often stated that reviewing courts are entitled to have the issues clearly defined, with citation to pertinent au-

thorities, and are not a depository in which an appellant is allowed to dump entire matters of pleadings, court actions, arguments or research upon the court (*In re Estate of Kunz* (1972), 7 Ill. App. 3d 760, 288 N.E.2d 520), we have reviewed the record and find that respondent's counsel elicited ample information on the past relationship of the parties and was given abundant leeway in doing so.

■ Finally, respondent contends that the trial court erred in excluding him from the marital residence and that his conduct did not justify the harsh remedy ordered. We disagree. The Act contemplates a grant of possession of a residence to a petitioner, to the exclusion of a respondent, under circumstances enumerated in section 208(c)(2) (Ill. Rev. Stat. 1983, ch. 40, par. 2302—8(c)(2))—one being where the parties are spouses. The grant of possession in this case was appropriate. Moreover, we note the trial judge advised that the parties could agree to suitable alternative housing for petitioner in lieu of the marital residence.

Affirmed.

MILLS, P.J., and GREEN, J., concur.