ALLEN GLATER, Petitioner-Appellee, v. ANTHONY FABIANICH, Respondent-Appellant.

First District (4th Division)   No. 1—92—1084

Opinion filed August 12, 1993.

Karl G. Rubesh and Diana Kenney, both of Carper & Rubesh, of Chicago, for appellant.

Helen Sigman and Richard J. Nealis, both of Chicago, for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

Following a hearing in the circuit court of Cook County, the trial court entered a plenary order of protection against respondent, Anthony Fabianich, pursuant to the Illinois Domestic Violence Act of 1986 (the Act) (Ill. Rev. Stat. 1991, ch. 40, par. 2311—1 *et seq.*). Respondent appeals, contending that the trial court erred in (1) denying his motion to dismiss for lack of subject matter jurisdiction, (2) entering a protective order based on insufficient evidence to support a finding of abuse, and (3) failing to set forth its jurisdictional findings on the record.

We affirm.

On October 2, 1991, petitioner, Allen Glater, filed a petition for an order of protection against respondent. In support of the petition, petitioner filed an affidavit stating, *inter alia*, that he had formerly

shared a residence with respondent, and that on March 17, 1991, respondent pushed and choked him. The affidavit also alleged that respondent threatened petitioner on numerous occasions. Based on the petition and supporting affidavit, the trial court entered an emergency order of protection and set the matter over for a hearing on October 23, 1991.

At the hearing, respondent filed a motion to dissolve the protection order alleging that the parties had never shared a common dwelling and that petitioner had suffered no immediate threat of harm. After entertaining argument on respondent's motion, the trial court held there was sufficient basis to establish a common household between the parties. The trial court then denied respondent's motion. Thereafter, the trial court heard testimony concerning the petition for an order of protection.

Petitioner testified that on March 17, 1991, respondent pushed him in a chair and choked him. Respondent then waived a stick in petitioner's face and asked him whether he knew how close he was to dying. Petitioner further testified that on July 8, 1991, he spoke with respondent twice by telephone and once in person. During one telephone conversation, respondent threatened him with physical violence. On the next day, respondent telephoned petitioner and indicated he was still angry over the termination of their relationship.

Following petitioner's testimony, the matter was continued until October 28, 1991. Subsequently, the trial court entered four interim orders of protection which were valid until February 24, 1992. On that day, respondent requested a rehearing on the motion to dismiss the protective order. The trial court granted petitioner's motion to strike respondent's motion; thereafter, testimony on the petition for an order of protection resumed.

Laura Wallingford testified that respondent was a family friend who often baby-sat her children. Wallingford also testified that on September 27, 1991, she spoke with respondent by telephone. During this conversation, respondent indicated he was angry with petitioner over the termination of their relationship, which had occurred three months previous. According to Wallingford, respondent stated that he would like petitioner "to be erased," and also that he and petitioner were "going to have a chat and it won't be pretty."

Fred Kraemer testified that he lived in the apartment below respondent's at 2937 North Ashland, and paid rent to respondent. Kraemer stated that if his radio was not on, he could hear conversations in respondent's apartment. Kraemer also testified that he attended a party with petitioner and respondent on March 17, 1991. On

that date, he heard nothing out of the ordinary in respondent's apartment, and petitioner did not tell him that respondent had attacked him earlier that day.

Gwen Davis testified that she had known respondent since June of 1981. During that time she and respondent became best friends. Davis also testified that she had never known respondent to be violent, but rather a sincere and compassionate person. Davis stated she thought respondent and petitioner were best friends. Davis also stated she saw respondent and petitioner at a party on March 17, 1991, and they acted as though they were best friends.

Respondent testified that he, petitioner, and Kraemer attended a party together on March 17, 1991, and that he and petitioner later vacationed together for 8 or 10 days. Petitioner and respondent roomed together while on vacation. Respondent further testified that on May 12, 1991, petitioner sponsored two birthday parties for him. According to respondent, he and petitioner attended another party together on July 3, 1991.

Following closing arguments, a recess was taken and no further proceedings were held in the presence of a court reporter. Subsequently, the trial court entered a plenary order of protection based upon its oral findings. Respondent then filed this appeal.

■ First, respondent claims that the trial court improperly denied his motion to dismiss. Respondent argues that the trial court lacked jurisdiction because no evidence supported its finding that the parties had shared a common dwelling. Based on our review of the record, however, we agree with petitioner that the trial court had proper jurisdiction over the matter.

The Act was enacted to prevent abuse and harassment between family or household members. (Ill. Rev. Stat. 1991, ch. 40, par. 2311–2.) Section 103(5) of the Act defines family or household members as "persons who share or formerly shared a common dwelling." (Ill. Rev. Stat. 1991, ch. 40, par. 2311–3(5).) In denying respondent's motion to dismiss, the trial court held that the evidence supported a finding that the parties had formerly shared a common household.

At the hearing on respondent's motion, petitioner testified that he stayed at respondent's apartment every night for three months during 1989. According to petitioner, he kept a full complement of clothes at respondent's apartment, and he also performed some household chores. Petitioner further testified that he spent more than 90% of his time at respondent's apartment. To the contrary, respondent and Fred Kraemer testified that petitioner stayed at respondent's apartment only once for 8 to 10 days in 1990. Even so, it was for the

trial court to resolve conflicting testimony, and its determination should not be disturbed where it is supported by some evidence in the record. *Holland v. State Farm Mutual Automobile Insurance Co.* (1991), 216 Ill. App. 3d 463, 468.

Furthermore, incontrovertible evidence reveals that petitioner stayed at respondent's apartment for at least 7 to 10 days during 1990. During this time, petitioner ate and slept there every night and also contributed to household expenses such as buying food. We agree with the trial court that there was a sufficient basis in the evidence to find that the parties had shared a common household.

Respondent would have us hold that the Act only applies to persons related by marriage or blood. We decline to take such a restrictive view as the Act was designed to prevent abuse between persons sharing intimate relationships. (*People v. Whitfield* (1986), 147 Ill. App. 3d 675, 679.) Based on the evidence, we believe the trial court had subject matter jurisdiction. Therefore, the trial court properly denied respondent's motion to dismiss.

■ Second, respondent asserts that the order of protection should be reversed because petitioner failed to present sufficient evidence of abuse. Under the Act, a person commits abuse when he or she threatens another with physical force on one or more occasions. (Ill. Rev. Stat. 1991, ch. 40, par. 2311—3(1).) It is the trial court which determines, based on the evidence, whether any abuse has occurred or whether the potential for further abuse exists. (*People v. Whitfield* (1986), 147 Ill. App. 3d 675, 679-80.) After carefully reviewing the record, we believe the evidence supports the trial court's entry of the protective order.

At the hearing, petitioner testified that on March 17, 1991, respondent pushed and choked him, and also threatened him with a piece of wood. Petitioner further testified that during a telephone conversation with respondent on July 8, 1991, respondent threatened to break every window in petitioner's home. Petitioner also stated that on July 9, 1991, respondent threatened that if he broke off their relationship, respondent would not honor his commitment to a mutual friend not to commit any future acts of violence against petitioner. Moreover, Laura Wallingford testified that respondent stated during a telephone conversation on September 27, 1991, that he wanted petitioner "to be erased." The evidence supports a conclusion that the potential for abuse existed. Based on our review of the record, we cannot say that the trial court erred in finding respondent committed abuse or that the potential for abuse existed.

■ Lastly, respondent contends a new trial is warranted because the trial court failed to set forth its jurisdictional findings on the record. We find respondent's argument to be without merit. Here, the judge issued oral findings but respondent failed to include them in the record on appeal. An appellant is obliged to provide a complete record containing all matters relevant to the issues he raises on appeal, and any doubt arising from an incomplete record is resolved against him. (*In re Estate of Jacobs* (1989), 189 Ill. App. 3d 625, 629.) Moreover, a trial court's failure to state its jurisdictional findings on the record does not require reversal. (See *In re Marriage of Hagaman* (1984), 123 Ill. App. 3d 549, 554.) Hence, we agree with petitioner that no reversal is warranted.

For the foregoing reasons, the judgment entered by the circuit court is affirmed.

Affirmed.

CAHILL and HOFFMAN, JJ., concur.