*In re* MARRIAGE OF IRENE C. HEALY, Petitioner-Appellee, and MICHAEL T. HEALY, Respondent-Appellant.

First District (2nd Division) No. 1—93—3213

Opinion filed May 10, 1994.

Carmen M. Quinones and Gregory P. Turza, both of Chicago, for appellant.

Karen J. Bowes, of Chicago, for appellee.

PRESIDING JUSTICE DiVITO delivered the opinion of the court:

Pursuant to the petition of Irene C. Healy, the circuit court granted an *ex parte* emergency order of protection including injunctive relief against respondent Michael T. Healy. Subsequently, Michael filed a response, and a full hearing was held. On August 9, 1993, the circuit court entered a plenary order of protection. Michael brings this interlocutory appeal pursuant to Supreme Court Rule 307(a)(1) (134 Ill. 2d R. 307(a)(1)), asserting that there was insufficient evidence of abuse, harassment, or interference with personal liberty to support an order of protection, and that the circuit court failed to make the statutorily required findings on the record. We agree.

On July 20, 1993, Irene filed a petition for the dissolution of her marriage to Michael. Simultaneously with the filing of the petition, she filed a petition for order of protection. An *ex parte* hearing was held the same day, and an emergency order of protection was entered which, among other things, prohibited Michael from physical abuse,

harassment, or interference with the personal liberty of Irene and their children, Jason (age nine) and Megan (age six). Michael was also ordered to stay away from his family, but was granted visitation rights with the children. Irene was granted exclusive possession of the marital home, located at 16454 Grissom, Tinley Park, Illinois. Michael was enjoined from entering or remaining at the marital residence while under the influence of alcohol or other drugs. The matter was set for a contested hearing on August 9, 1993.

At the hearing on the petition held on that date, the following evidence was adduced.

Irene testified that Michael called her at about 10 p.m. on July 2, 1993, and said he wanted to take the children to Toledo, Ohio, for a golf tournament the next day. She agreed to this, but didn't know he was going to get the children up as early as 3:30 a.m. The children were upset, and she offered to stay home from work to take care of them. Michael returned the children at 1 p.m. on July 4, which was three hours later than he said they would be home. Michael's girlfriend had accompanied him on the trip to Toledo with the children.

She and Michael had an argument in the children's presence two weeks earlier, before he left the house. He spoke "verbal cuss words" in the presence of the children, but "[h]e didn't say it out loud." Her response to this was just to walk away, because she "didn't want to be bothered." When asked what effect Michael's conduct had on her, she replied, "I just don't—I don't want to be bothered with him anymore."

Irene thought Michael drank heavily, giving as a basis for her belief the fact that he came home "wobbly" one night. She admitted, however, that she went to sleep, so she had no other indication that he had been drinking heavily. She further testified that she was frightened that Michael "will be coming home at night. He may have been drinking, he might be slamming things around, and I just don't know." She also feared that "maybe he's getting into a car accident or who knows."

During the period following the entry of the emergency order of protection excluding Michael from the family home, the children had been "in an uproar." They had been misbehaving; the son had been throwing rocks at people and buildings. As a result of the children's behavior, Irene had taken them in for counseling.

On cross-examination, Irene testified that she had been living in their home with Michael and the children for about four years. She agreed to let him take the children to the golf tournament in Toledo, but "had no idea" he was going to get them up so early for the trip.

He may have taken them to a golf tournament on the 4th of July weekend before, but Irene couldn't say this was the third time and didn't know it started on the morning of July 3.

Irene presented no additional evidence. Michael moved for a finding at the close of Irene's case, but the motion was denied after argument.

Michael testified in his own behalf. He was then staying at a friend's apartment at 7248 83rd Court in Tinley Park. Prior to the entry of the order of protection, he had been living with his wife and children in the family home. He was employed by Score International Sports as a marketing manager for an LPGA tournament.

He had gone to Toledo, Ohio, with the children on the morning of July 3; this was the third time they had made this trip on the 4th of July weekend. He got up at about 4 a.m. and awakened the children. The three of them had breakfast, got dressed, and left for Toledo. They got up early because it was a four-hour drive, and the tournament started at 8:30 a.m. He had brought up the trip with Irene about two weeks earlier, but one of their cars had been "giving [them] some trouble," so he was uncertain about making the trip. He arrived home with the children at about 11:30 a.m. on July 4, but no one was home. His girlfriend Terry had accompanied him and the children; she stayed in a separate room at the Sheridan Hotel.

Michael had probably used curse words with Irene in the past, but that was not his regular habit. He did not drink excessively, and he had not come home "wobbly." He called Irene at 8:30 or 9 p.m. on July 2 and was not intoxicated when he called.

On cross-examination, Michael testified that he was living with Terry Phelan and had been doing so since he had been "thrown out" of his house. He had previously spent the night there, including one occasion when he had the children with him. Terry had accompanied him on the trip to Toledo. He reiterated that he does not drink excessively and is in Cheers Sports Pub and Grub about two or three times a week. He had said that he would have the children back by 10 a.m. on Sunday, July 4, but did not get them back until 11:30 a.m.

The court ruled that the order of protection would continue for the pendency of the suit. When asked by Michael's counsel for the grounds for its ruling, the court stated: "I don't have to give an explanation. I listen and I weigh the evidence. It will continue."

In this appeal, Michael seeks reversal of the injunction excluding him from the marital home and enjoining him against physical abuse, harassment, interference with personal liberty, and contact with his family.

Michael first asserts that the circuit court abused its discretion in

entering the order of protection on August 9, 1993, because each and every aspect of the injunctive order is unsupported by evidence presented at the hearing. Irene responds that the court properly exercised its discretion in entering the order.

The Illinois Domestic Violence Act of 1986 (750 ILCS 60/101 *et seq.* (West 1992)) includes the following definitions:

"(1) 'Abuse' means physical abuse, harassment, intimidation of a dependent, interference with personal liberty or willful deprivation ***.

* * *

(6) 'Harassment' means knowing conduct which is not necessary to accomplish a purpose that is reasonable under the circumstances; would cause a reasonable person emotional distress; and does cause emotional distress to the petitioner.

* * *

(8) 'Interference with personal liberty' means committing or threatening physical abuse, harassment, intimidation or willful deprivation so as to compel another to engage in conduct from which he or she has a right to abstain or to refrain from conduct in which she or he has a right to engage.

* * *

(13) 'Physical abuse' includes sexual abuse and means:

* * *

(ii) knowing, repeated and unnecessary sleep deprivation." 750 ILCS 60/103 (West 1992).

■ The order of protection at issue here includes a requirement that Michael is prohibited from committing physical abuse upon Irene and the children. As indicated above, physical abuse includes "knowing, repeated and unnecessary sleep deprivation." (750 ILCS 60/103(13)(ii) (West 1992).) In her petition, Irene stated that she was unable to sleep or eat well. She testified that she was unable to sleep because she was afraid of what her husband might do when he came home at night or because she feared he might be in an accident because of his drinking. She testified that on the morning of July 3, 1993, Michael awakened the children in the middle of the night and that she and they were upset.

This is hardly adequate evidence of "knowing, repeated and unnecessary sleep deprivation." The order of protection was not warranted on the ground of physical abuse; there is no evidence of physical abuse in the record.

The order also includes a requirement that Michael is prohibited from harassing Irene and the children. "Harassment results from

intentional acts which cause someone to be worried, anxious, or uncomfortable." (*People v. Zarebski* (1989), 186 Ill. App. 3d 285, 294, 542 N.E.2d 445; *People v. Whitfield* (1986), 147 Ill. App. 3d 675, 679, 498 N.E.2d 262.) There need not be any overt acts of violence. (*Zarebski*, 186 Ill. App. 3d at 294.) Irene testified that Michael had been verbally abusive to her. Her petition stated that she was "extremely fearful of" him, and that she and the children were unable to show any reactions "for fear of [his] wrath." There were conclusional allegations, then, that Irene was anxious, worried, and uncomfortable, but there was no evidence that Michael's acts were harassing or intended to harass. The statute requires knowing conduct which is not necessary to accomplish a purpose which is reasonable under the circumstances; which would cause a reasonable person emotional distress; and which does cause emotional distress to the petitioner. There is no evidence in the record that Michael's conduct was knowing or that it was not necessary to accomplish a purpose which was reasonable under the circumstances. Nor is there evidence that Michael's conduct would have caused a reasonable person emotional distress. The order of protection was not warranted on the basis of harassment; there is insufficient evidence of harassment in the record.

The order also contains a requirement prohibiting Michael from interfering with the personal liberty of Irene and the children. Although Irene testified that she was unable to sleep or eat well, both of which are activities in which she has a right to engage, there is no evidence in the record that Michael has compelled her or the children to refrain from eating or drinking, or did any act that would have led to that result. The order of protection was not warranted on the basis of interference with personal liberty; there is no evidence of interference with personal liberty in the record.

The bases for the request for an order of protection were that Irene believed Michael had an alcohol problem; that he muttered swear words under his breath on one occasion; that he awakened the children early in the morning to go on a trip; and that she was afraid he might have an accident. There were no credible allegations of abuse, harassment, or interference with personal liberty. There was, then, insufficient evidence to support the entry of a plenary order of protection. Although the Illinois Domestic Violence Act of 1986 is "to be construed liberally to protect victims of domestic violence, help them avoid further abuse, and to expand the remedies for victims of domestic violence including, when necessary, physical separation of the parties" (*In re Marriage of Blitstein* (1991), 212 Ill. App. 3d 124, 132, 569 N.E.2d 1357), there must be some evidence in the record to

support the relief requested. Where, as here, the record is bereft of such evidence, it is an abuse of discretion for the circuit court to enter a plenary order of protection.

Michael also asserts that the circuit court's failure to make specific findings in support of its ruling, as required by statute, is reversible error. Irene responds that the appellate court has held that this failure does not require reversal.

■ The Domestic Violence Act of 1986, as amended in 1993, provides:

"[T]he court shall make its findings in an official record or in writing, and shall at a minimum set forth the following:

(i) That the court has considered the applicable relevant factors described in paragraphs (1) and (2) of this subsection.

(ii) Whether the conduct or actions of respondent, unless prohibited, will likely cause irreparable harm or continued abuse.

(iii) Whether it is necessary to grant the requested relief in order to protect petitioner or other alleged abused persons." 750 ILCS 60/214(c)(3) (West Supp. 1993).

From 1986 through 1992, the relevant passage read:

"(3) If there otherwise would be no official record of the court's findings, such findings shall be in writing." 750 ILCS 60/214(c)(3) (West 1992) (Pub. Act 84—1305, art. II, § 214(c)(3), eff. August 21, 1986).

Prior to 1986, the requirement that findings be made was far more general:

"In determining whether to grant a specific remedy in an order of protection, the court shall consider relevant factors, including but not limited to the following, and shall make findings thereon:

(1) the frequency, severity, pattern and consequences of the respondent's past abuse of the petitioner or any family or household members ***, and the likelihood of danger of future abuse to the petitioner or any family or household members." Ill. Rev. Stat. 1983, ch. 40, par. 2302—8(d)(1).

In this case, the court not only did not make any findings, it refused to do so in response to Michael's request. As indicated above, when asked the grounds for continuing the order of protection, the judge stated, "I don't have to give an explanation. I listen and I weigh the evidence. It will continue."

The written order entered by the court indicates that it complied with the statutory requirement by making its findings both orally and in writing. The record, however, contains no indication of any such findings.

Irene asserts that in *In re Marriage of Hagaman* (1984), 123 Ill.

App. 3d 549, 462 N.E.2d 1276, the court states that a "reviewing court will not overturn the court's order solely for the reason that the trial judge did not make specific findings on the factors referenced in section 208(d)(1) of the Act." (*Hagaman*, 123 Ill. App. 3d at 554.) Although it is true that the appellate court so held in *Hagaman*, that ruling was made under the statute in effect at that time, before it was amended twice to include and to clarify the requirement of specific findings. (Pub. Act 84—1305, art. II, § 214(c)(3), eff. August 21, 1986; Pub. Act 87—1186, § 3, eff. January 1, 1993.) The current statute plainly requires specific findings for an order of protection.

We hereby reverse the order of the circuit court because it abused its discretion in entering the plenary order of protection. Whether reversal would be necessary in a case where no specific findings are made by the circuit court, but the record justifies the entry of an order of protection, we reserve for another case. Suffice it to say, the circuit court should abide by the specific statutory mandate to make appropriate findings.

Reversed.

HARTMAN and SCARIANO, JJ., concur.