THE PEOPLE OF THE STATE OF ILLINOIS *ex rel.* GWENA MINTEER, Petitioner-Appellee, v. MARK KOZIN, Respondent-Appellant.

First District (4th Division)    No. 1—97—1728

Opinion filed June 30, 1998.

Gregory J. Schlesigner and Michael D. Robbins, both of Chicago, for appellant.

Nathan Diamond-Falk, of Chicago, for appellee.

PRESIDING JUSTICE CERDA delivered the opinion of the court:

This is an appeal from an order of protection that petitioner, Gwena Minteer, obtained against respondent, Mark Kozin. On appeal, respondent asserts that (1) there was insufficient evidence to support the order of protection; (2) the trial court erred by considering evidence from a prior *ex parte* emergency hearing; and (3) the trial court erred by failing to articulate any specific findings, as required by statute. For the following reasons, we reverse.

On February 7, 1997, petitioner testified in an *ex parte* emergency hearing that respondent was her ex-boyfriend. Petitioner told the court that she met respondent two years earlier and had dated him for three months. When petitioner decided to end her relationship with respondent, he kept calling her, kept going over to her house, stood outside her house waiting for her to come home from work at 4 a.m., and got her fired from her job by being a customer at her place of employment. When petitioner found another job, respondent called her there at least five or six times a day. For that, respondent was arrested for telephone harassment, but the charges were dismissed. Since that time, respondent followed petitioner home from work "all the time" and left notes on her car almost every day. In addition, petitioner had been told by friends that respondent had gone to Heavenly Bodies, a club that petitioner frequented, every week, and waited for her to arrive.

Based on petitioner's *ex parte* testimony, the trial court issued an emergency order of protection against respondent from February 7, 1997, through February 28, 1997.

At the court hearing on March 21, 1997, both petitioner and respondent were present. Petitioner asked for an extension of the order of protection. Prior to the hearing, the trial court explained that when the previous trial judge signed the order of protection, he found that petitioner had established a *prima facie* case. Therefore, the trial court determined that the burden of going forward shifted to respondent.

Petitioner, called by respondent as an adverse witness, testified that she dated respondent on and off for a year. They met in January

1995 at the Admiral Theater, a gentleman's club where petitioner was employed as a dancer. The following month, petitioner called respondent and began dating him. After respondent bought petitioner a $3,100 diamond ring and several other items, petitioner ended the relationship in May 1995. Initially, she refused to return the ring, but eventually she returned the ring to respondent in open court. Subsequently, petitioner saw respondent at the Admiral Theater and was fired because she was dating him, which was a violation of the club's policy. At another club where petitioner worked, Crazy Horse II, respondent was arrested for telephone harassment, but those charges were eventually dismissed.

Petitioner testified that she called respondent in March 1996, went to dinner with him in April 1996, and went to a riverboat and dinner with him in 1996, but petitioner did not consider those dates. Petitioner also admitted that, in the past, she contacted respondent whenever she needed money or companionship. Further, petitioner testified that respondent never threatened her. Nevertheless, petitioner complained that respondent left notes on her car on one occasion and was present at a bar that petitioner frequented even though he did not say anything to her.

Respondent, the owner of a temporary help agency, testified that he met petitioner at a gentleman's club in February 1995. Within a short time, they began dating, which lasted until July 1995. Respondent bought gifts for petitioner, including a diamond ring. Petitioner called respondent in March 1996 at which time she agreed to go to dinner with respondent. They started dating again.

Respondent denied ever following petitioner home, leaving notes on her car, or threatening her. Respondent further testified that he was in a bar and restaurant, Dakota's, with other people at the same time petitioner was present. Although he saw petitioner, he did not speak to her or do anything to her.

Based on that evidence, the trial court found that respondent failed to overcome the *prima facie* case established at the earlier *ex parte* hearing. The court then entered a plenary order of protection for a period of two years. Respondent was ordered not to harass petitioner, interfere with petitioner's personal liberty, or stalk petitioner.

On appeal, respondent asserts that the evidence presented at the court hearing was insufficient to support the entry of an order of protection. Respondent also asserts that the trial court improperly considered evidence from the previous *ex parte* emergency hearing and improperly held that the previous hearing established a *prima facie* case for the petitioner, which created an improper evidentiary burden for the respondent to overcome.

At the beginning of the court hearing for the plenary order of protection, the trial court stated:

> "[A]s I understand it, the law indicated that when Judge Hoffenberg signed this [emergency] order of protection, he found there was—the petitioner had established a prima facie case with regards to the element of the statute. The burden of going forward with the evidence shifts to [the respondent]."

After the testimony of petitioner and respondent, the trial court ruled that respondent failed to overcome the *prima facie* case established at the earlier *ex parte* hearing. At the close of testimony, the court simply stated:

> "The Court has heard had [*sic*] evidence in the case, the testimony of the respective parties and finds the respondent has failed to overcome the prima facie case established in the record of this cause. There will be a plenary order of protection for a period of two years."

Petitioner responds that the trial court did not consider any evidence adduced at the *ex parte* hearing until after respondent opened the door to that consideration when he used the *ex parte* hearing transcript to impeach petitioner, whom he called to testify. Petitioner does not address the trial court's determination that petitioner established her *prima facie* case during the *ex parte* hearing and that respondent failed to overcome the *prima facie* case.

The trial court used the incorrect standard of proof. In *In re Marriage of Gordon*, 233 Ill. App. 3d 617, 632, 599 N.E.2d 1151 (1992), on which respondent relies, the trial court entered an *ex parte* order of protection after finding that the mother had committed physical abuse on the child. Subsequently, the trial court heard six months of testimony to determine whether the order of protection should be extended. *In re Marriage of Gordon*, 233 Ill. App. 3d at 632. Following the end of the evidence, the trial court shifted the burden to the mother on the basis of the testimony heard during the *ex parte* hearing, then found that she failed to negate the *prima facie* case established during that hearing. *In re Marriage of Gordon*, 233 Ill. App. 3d at 649. The trial court then extended the emergency order of protection until further order of court. *In re Marriage of Gordon*, 233 Ill. App. 3d at 649.

Since the order was essentially a custody order with no time limit and the Illinois Domestic Violence Act of 1986 (the Domestic Violence Act or Act) (Ill. Rev. Stat. 1989, ch. 40, par. 2311—1 *et seq.* (now 750 ILCS 60/101 *et seq.* (West 1994))) explicitly states that custody is not a remedy that may be granted under an emergency order and plenary orders of protection must have a time limit, the order was invalid on

its face. *In re Marriage of Gordon*, 233 Ill. App. 3d at 646. Although the trial court judgment could have been reversed on the grounds that the judge exceeded his statutory authority and that the Domestic Violence Act was misused, the appellate court declined to do so and considered whether the judge's findings were against the manifest weight of the evidence. *In re Marriage of Gordon*, 233 Ill. App. 3d at 648.

The appellate court ruled that it was improper for the trial court to consider the evidence heard at the *ex parte* hearing and to find that the mother failed to negate the father's *prima facie* case. *In re Marriage of Gordon*, 233 Ill. App. 3d at 649-50. The reviewing court explained that the Domestic Violence Act requires that the petitioner prove abuse by a preponderance of the evidence, not establish a *prima facie* case. *In re Marriage of Gordon*, 233 Ill. App. 3d at 650.

■ The facts of this case are very similar to those of *Gordon*. Accordingly, evidence during the *ex parte* hearing should not have been considered to relieve petitioner of her burden of proving by a preponderance of the evidence that respondent had abused her. The trial court improperly determined that petitioner had established a *prima facie* case through the evidence she presented at the *ex parte* hearing, then compounded that error by finding that respondent failed to overcome the *prima facie* case. That is not the standard to be used. Instead, the court should have considered only the evidence presented at the later hearing, where both parties were present, before determining whether petitioner met her burden of proving by a preponderance of the evidence that respondent had abused her. Section 205(a) of the Act, which sets out the standard to be used to obtain an order of protection, provides in part:

> "The standard of proof *** is proof by a preponderance of the evidence, whether the proceeding is heard in criminal or civil court." 750 ILCS 60/205(a) (West 1994).

■ Based on the evidence presented at the hearing on the plenary order of protection, we find that the court abused its discretion when it entered the order of protection. 750 ILCS 60/214(a) (West 1994); *In re Marriage of Healy*, 263 Ill. App. 3d 596, 602, 635 N.E.2d 666 (1994); *In re Marriage of Lichtenstein*, 263 Ill. App. 3d 266, 269, 637 N.E.2d 1258 (1994).

While this case rests on the credibility of the witnesses, which is best left to the trier of fact to determine, we find that the trial court abused its discretion in entering the plenary order of protection because there was insufficient evidence to prove by a preponderance of the evidence that respondent had abused petitioner. The record shows that petitioner complained that (1) respondent was at a bar that she

frequented even though he did not say anything to her; (2) she saw respondent leave notes on her car on one occasion; and (3) respondent was arrested for telephone harassment for telephoning petitioner at her place of employment, but those charges were dismissed. That is not sufficient evidence for an order of protection. Even accepting the trial court's determination that petitioner was a credible witness, she failed to prove her case by a preponderance of the evidence.

Finally, respondent asserts that the order of protection should be overturned because the trial court failed to articulate specific findings on the record. We agree. Instead of making any specific findings about the relevant factors, the court simply stated at the close of testimony:

"The Court has heard had [sic] evidence in the case, the testimony of the respective parties and finds the respondent has failed to overcome the prima facie case established in the record of this cause. There will be a plenary order of protection for a period of two years. There will be no harassment, no interference with the personal liberty, and he'll be barred from stalking."

Therefore, we reverse the entry of the order of protection on the basis that the trial court failed to meet its statutory obligation to make specific findings prior to entering an order of protection under the Act. *In re Marriage of Henry*, 297 Ill. App. 3d 139, 143 (1998); *In re Marriage of Healy*, 263 Ill. App. 3d 596, 602, 635 N.E.2d 666 (1994). Section 214(c) of the Act was amended in 1993 to provide as follows:

"(1) In determining whether to grant a specific remedy, other than payment of support, the court shall consider relevant factors, including but not limited to the following:

(i) the nature, frequency, severity, pattern and consequences of the respondent's past abuse, neglect or exploitation of the petitioner or any family or household member, including the concealment of his or her location in order to evade service of process or notice, and the likelihood of danger of future abuse, neglect, or exploitation to petitioner or any member of petitioner's or respondent's family or household;

\* \* \*

(3)\*\*\* [T]he court shall make its findings in an official record or in writing, and shall at a minimum set forth the following:

(i) That the court has considered the applicable relevant factors described in paragraphs (1) and (2) of this subsection.

(ii) Whether the conduct or actions of respondent, unless prohibited, will likely cause irreparable harm or continued abuse.

(iii) Whether it is necessary to grant the requested relief in order to protect petitioner or other alleged abused persons." 750 ILCS 60/214(c) (West 1994).

*Healy*, which was decided under the current statute, distinguished *In re Marriage of Hagaman*, 123 Ill. App. 3d 549, 462 N.E.2d 1276 (1984), which was decided under a prior version of the Act. The *Hagaman* court held that an order of protection would not be reversed solely because the trial court failed to make specific findings on the factors referenced in the statute. *In re Marriage of Healy*, 263 Ill. App. 3d at 602.

Petitioner relies on *Glater v. Fabianich*, 252 Ill. App. 3d 372, 377, 625 N.E.2d 96 (1993), which relied on *In re Marriage of Hagaman*, 123 Ill. App. 3d 549, 462 N.E.2d 1276. The *Glater* court stated that a trial court's failure to state specific findings on the record does not require reversal.

Further, petitioner analogizes this case to *In re Marriage of McCoy*, 253 Ill. App. 3d 958, 964, 625 N.E.2d 883 (1993), which was decided under the current statute. We find this case to be distinguishable from *McCoy*. Although the *McCoy* trial court's written order could have contained more express findings, the reviewing court concluded that the findings articulated by the trial court comported with the minimum statutory requirements. *McCoy*, 253 Ill. App. 3d at 965. The written findings stated that the petitioner was an abused person as defined in the Act and that the children were persons protected by the order of protection, while the oral record indicated that the court found the evidence established the respondent to be a violent person whom the petitioner had reason to fear and, given the respondent's attempts to circumvent the visitation orders previously entered, it was proper to prevent him from contacting the children at school. *McCoy*, 253 Ill. App. 3d at 965.

In this case, the trial court made no findings, oral or written, regarding the relevant factors. Therefore, we also reverse the entry of the order of protection on the basis that the trial court failed to make the specific findings required by the Act.

Based on the foregoing, we reverse the circuit court judgment and vacate the order of protection.

Reversed.

McNAMARA and SOUTH, JJ., concur.