CYNTHIA HEDRICK-KOROLL, Petitioner-Appellee, v. HUGHES ANDERSON BAGLEY, JR., Respondent-Appellant.

Second District    No. 2—03—0843

Opinion filed September 30, 2004.

Keenan J. Saulter, of Saulter & Beals, of Chicago, for appellant.

David A. Caulk, of Caulk & Szymanski, of Loves Park, for appellee.

JUSTICE CALLUM delivered the opinion of the court:

## I. INTRODUCTION

Petitioner, Cynthia Hedrick-Koroll, sought an order of protection against respondent, Hughes Anderson Bagley, Jr. The trial court is-

sued an *ex parte* emergency order of protection and ultimately a plenary order of protection. On appeal, respondent raises several contentions, but we need address only one of them. We conclude that the trial court failed to make the factual findings required by section 214(c)(3) of the Illinois Domestic Violence Act of 1986 (Act) (750 ILCS 60/214(c)(3) (West 2002)). Therefore, we remand so that the trial court can make the required findings.

## II. BACKGROUND

We discuss only those facts pertinent to our disposition of the appeal. The parties began dating during the spring of 2001, shortly before they graduated from law school in De Kalb. After law school, respondent returned to his home in Sioux City, Iowa, and petitioner returned to Loves Park. The parties' relationship ended around November 2001.

On May 17, 2002, petitioner sought an order of protection against respondent. According to the verified petition, respondent:

"has been advised by petitioner and [her] attorney—by e-mail and regular mail, to discontinue all contact by phone, by e-mail. [Respondent] is an ex-convict with numerous criminal violations including weapons charges. He has continued to contact me, by e-mail, by phone (home and cell) and has issued threats against my professional relationships. He has been observing—or having observed—my home + activities. He has consistently warned me of further harm if I contact my attorney or my attorney contacts him. I am in great fear of the volatile nature of his conduct, his continued attempts to have contact with me, his written letters of animosity against my daughter and Karl A. Szymanski [petitioner's fiancé]. He has permanent orders of protection against him in Plymouth County[, Iowa,] for both of his parents. I believe he will come to Illinois, harm me and my daughter and may enter my workplace or Mr. Szymanski's workplace to harm me or others."

On May 17, 2002, Judge Truitt issued an *ex parte* emergency order protecting petitioner, Szymanski, and petitioner's three children. The order directed respondent to stay away from petitioner and all other protected persons and prohibited him from contacting them or engaging in surveillance of them. The order prohibited him from committing physical abuse, harassment, interference with personal liberty, intimidation of a dependent, willful deprivation, neglect, exploitation, and stalking. Also, the order prohibited respondent from entering or remaining at petitioner's residence, Harlem High School, or petitioner's or Szymanski's place of employment. The emergency order was to remain in effect until May 30, 2002.

The trial court extended the emergency order of protection each time the cause was continued. The hearing on the plenary order of

protection took place before Judge Nordquist on July 19, 2002, November 8, 2002, and May 29, 2003. At the conclusion of the hearing on May 29, 2003, the trial court took the matter under advisement and continued the cause for a decision.

On July 1, 2003, the trial court issued a plenary order of protection expiring on January 1, 2004. The terms of the plenary order were substantially the same as the terms of the emergency order of protection. Most notably, the plenary order enjoined defendant from contacting the protected persons by telephone, mail, or e-mail, and from conducting surveillance of any protected person. Respondent timely appealed.

## III. DISCUSSION

### A. Mootness

■ Because the emergency order of protection expired and was replaced by the plenary order of protection, and because the plenary order of protection expired on January 1, 2004, the issues respondent raises on appeal are moot. *Wilson v. Jackson*, 312 Ill. App. 3d 1156, 1162-63 (2000). We address this appeal, however, under the public interest exception to the mootness doctrine. See *Creaser v. Creaser*, 342 Ill. App. 3d 215, 219 (2003) (moot issues may be reviewed under public interest exception where there is a substantial public or private question involved, an authoritative determination is required for future guidance, and the issue is likely to recur); *Whitten v. Whitten*, 292 Ill. App. 3d 780, 784 (1997) (orders of protection address problems of public interest, and their purposes can be achieved only if courts properly apply the statutory requirements). Also, we note that respondent represents that, in January 2004, petitioner obtained a two-year extension of the plenary order of protection. Thus, our ruling on the validity of the trial court's orders will impact the extension currently in place.

### B. Lack of Factual Findings

■ Although respondent raises several contentions on appeal, we need address only his argument that the trial court failed to make the factual findings required by section 214(c) of the Act. We note that respondent's failure to raise this issue in the trial court does not preclude us from addressing it. *In re Marriage of Henry*, 297 Ill. App. 3d 139, 141-43 (1998).

Addressing the factual findings required for all types of orders of protection, section 214(c) provides in pertinent part:

"(1) In determining whether to grant a specific remedy, *** the court shall consider relevant factors, including but not limited to the following:

(i) the nature, frequency, severity, pattern and consequences of the respondent's past abuse, neglect or exploitation of the petitioner or any family or household member, \*\*\* and the likelihood of danger of future abuse, neglect, or exploitation to petitioner or any member of petitioner's or respondent's family or household[.]

\* \* \*

(3) Subject to the exceptions set forth in paragraph (4) of this subsection, the court shall make its findings in an official record or in writing, and shall at a minimum set forth the following:

(i) That the court has considered the applicable relevant factors described in paragraphs (1) and (2) of this subsection.

(ii) Whether the conduct or actions of respondent, unless prohibited, will likely cause irreparable harm or continued abuse.

(iii) Whether it is necessary to grant the requested relief in order to protect petitioner or other alleged abused persons.

(4) For purposes of issuing an ex parte emergency order of protection, the court, as an alternative to or as a supplement to making the findings described in paragraphs (c)(3)(i) through (c)(3)(iii) of this subsection, may use the following procedure:

When a verified petition for an emergency order of protection \*\*\* is presented to the court, the court shall examine petitioner on oath or affirmation. An emergency order of protection shall be issued by the court if it appears from the contents of the petition and the examination of petitioner that the averments are sufficient to indicate abuse by respondent and to support the granting of relief under the issuance of the emergency order of protection." 750 ILCS 60/214(c) (West 2002).

The record contains no indication that the trial court made any findings before issuing the emergency order of protection. The order states that it is "based on the findings of this court \*\*\* which were made orally for transcription." There is no transcript of the hearing during which the trial court issued the emergency order of protection, and thus no "official record" of the trial court's findings. Section 214(c)(4) provides that, as an alternative to making specific findings, the court may issue an emergency order of protection after examining the petitioner under oath or affirmation and reviewing the contents of the verified petition. Here, because there is nothing in the record indicating that the trial court examined petitioner under oath or affirmation, we cannot confirm that the court complied with section 214(c)(4).

We believe that it would be unfair here to resolve any doubts arising from the incomplete record against respondent. See *Glater v. Fa-*

*bianich*, 252 Ill. App. 3d 372, 377 (1993). The record reveals that respondent attempted, apparently unsuccessfully, to obtain the missing transcript from the circuit court clerk. Respondent was not present during the hearing and therefore would not have had a meaningful opportunity to present a bystander's report or an agreed statement of facts. See 166 Ill. 2d Rs. 323(c), (d).

There is similarly no indication that the trial court made the required findings upon issuing the plenary order of protection. The order states that it is "based on the findings of this court *** which were made orally for transcription." At the conclusion of the hearing, the trial court took the matter under advisement and never made any oral findings. In its memorandum of decision, the court merely states that "Petitioner has proven her Petition by her burden of proof ***." This cursory finding does not satisfy the statutory requirements. See *People ex rel. Minteer v. Kozin*, 297 Ill. App. 3d 1038, 1043 (1998) (court's finding that " 'the respondent has failed to overcome the prima facie case established in the record' " was insufficient).

The failure to make the required findings is reversible error. *Kozin*, 297 Ill. App. 3d at 1043; *Henry*, 297 Ill. App. 3d at 143-44. In *Henry*, this court reversed the order of protection outright. We conclude that *Henry* is distinguishable because the opinion in *Henry* contains no indication that any purpose would have been served by remanding the cause so that the trial court could make the required findings. Here, because the trial court has extended the plenary order of protection, its validity is still directly at issue. Accordingly, remanding the cause to have the trial court make the required findings would not be a meaningless exercise. We note that, in other settings, the typical remedy when the trial court fails to make specific findings required by law is to remand the cause to allow the court to make those findings. See *Bedoya v. Illinois Founders Insurance Co.*, 293 Ill. App. 3d 668, 681 (1997) (trial court failed to set forth findings required before imposing sanctions under Supreme Court Rule 137 (134 Ill. 2d R. 137)); *People ex rel. Graham v. Adams*, 239 Ill. App. 3d 643, 647-48 (1993) (trial court failed to set forth specific findings supporting its decision to deviate from statutory guidelines governing child support).

We are aware that the litigation here has been extensive and that our decision will delay an appeal on the merits. Nevertheless, given the clear authority of section 214(c)(3) of the Act, we must remand for compliance with that statutory provision.

## IV. CONCLUSION

Accordingly, we remand the cause so that the circuit court of Win-

nebago County can set forth the findings mandated by section 214(c)(3) of the Act.

Remanded.

McLAREN and HUTCHINSON, JJ., concur.