# Illinois Official Reports

## Appellate Court

---

### *Dibenedetto v. Dibenedetto*, 2019 IL App (3d) 180761

---

| | |
|---|---|
| Appellate Court Caption | NANCY DIBENEDETTO, Petitioner-Appellee, v. ROBERT DIBENEDETTO, Respondent-Appellant. |
| District & No. | Third District No. 3-18-0761 |
| Filed | November 12, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 18-OP-1113; the Hon. David Garcia, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Fred A. Joshua, of Fred A. Joshua P.C., of Hickory Hills, for appellant. Mona Elgindy and Andrea DeTellis, of Prairie State Legal Services, Inc., of Joliet, for appellee. |
| Panel | PRESIDING JUSTICE SCHMIDT delivered the judgment of the court, with opinion. Justices Lytton and O'Brien concurred with the judgment and opinion. |

**OPINION**

¶ 1 Petitioner, Nancy Dibenedetto, filed a verified petition for a plenary order of protection against respondent, Robert Dibenedetto, her husband. In the petition, Nancy alleged a history of verbal, emotional, and physical abuse that spanned decades but recently increased in frequency and severity. Following a hearing on the petition, the court granted Nancy's petition. It made several findings as to the credibility of witnesses. The court, in its written order, indicated the abuse was likely to continue in the absence of an order of protection. Robert appeals, arguing the court did not conform its written or oral decision to the statutory requirements necessary to issue an order of protection. Further, Robert asserts the court's findings concerning the alleged abuse were against the manifest weight of the evidence. We affirm.

¶ 2                                    I. FACTS

¶ 3 The parties have been married for over 45 years. On May 24, 2018, Nancy filed a verified petition for an order of protection against Robert. The petition also requested that the court issue an emergency order of protection. Nancy alleged that Robert verbally abused her, insulted her daily, routinely humiliated her in public, tracked her movements, threatened to kill her, frequented her place of work to cause problems, and physically abused her in the past. The circuit court denied Nancy's motion for an emergency order of protection.

¶ 4 On May 30, 2018, Nancy filed an emergency motion to rehear her order of protection. In her emergency motion, Nancy alleged Robert placed a global positioning system (GPS) device in her vehicle, sent text messages indicating his knowledge of her location, visited her place of work despite the fact that her employer banned him from entering her workplace, persistently called her, and went to all of their children's houses looking for her. Nancy was in fear for her life due to Robert's past threats to kill her should she ever leave him. Nancy knew Robert had access to firearms. She believed her safety was threatened, particularly at work. On June 6, 2018, the circuit court entered an emergency order of protection that ordered Robert to stay away from Nancy and cease further acts or threats of abuse.

¶ 5 The court heard arguments on Nancy's petition for a plenary order of protection in November 2018. Nancy testified that she suffered emotional, physical, and verbal abuse from Robert for the duration of their marriage; Robert's abuse recently increased. In May 2018, the parties' youngest child told Nancy she would be moving out to go to college. Nancy decided she was finally going to leave Robert because she felt her obligations to her children lessened. Robert would check her calendar to determine her work hours and ensure Nancy was home when she was not working. Due to his heightened awareness of her location, Nancy entered a women's shelter in May 2018.

¶ 6 Nancy detailed Robert's history of abuse back to 1979, when he sent her to the emergency room after breaking her eye socket for coming home late. Robert repeatedly removed the engine coil wire from Nancy's vehicle to prevent her from going anywhere. Nancy filed for divorce and an order of protection in 1999. The court granted Nancy's petition for an order of protection. Robert told Nancy he would attend marriage counseling. Nancy withdrew her petitions. After Robert and Nancy reconciled, Robert told Nancy she was lucky she decided to take him back because he was ready to "blow 'em away." Robert followed Nancy to monitor where she went and with whom. Nancy described Robert's practice of going to the grocery

store with her, verbally insulting her in front of the other customers, and refusing to pay for the groceries unless she complied.

¶ 7    In February 2018, Robert's alleged abuse escalated. Nancy attended college classes; she began separating herself from Robert as a result. Robert threatened her, saying, "[i]f you think you're leaving, I'll kill ya." Robert made these types of threats three to four times a month. In April 2018, Robert came to Nancy's workplace. He brought the spare set of keys to Nancy's vehicle and dangled them in front of her. He told her he was going to take the car to have work done. Nancy believed Robert was threatening her, taking her car away as punishment. Robert never fixed the vehicle. Regarding the GPS device Nancy found in her car in May 2018, Robert sent her a text message that read, "GPS is real nice. Why are you doing this? When are you coming home? Where the heck are you?" After Nancy filed her petition for an order of protection, Robert persistently called and messaged Nancy. He continued to show up at her workplace looking for her. Nancy believed her safety was at risk without the order of protection.

¶ 8    Tina Ogrondik, the parties' child, also testified. She witnessed Robert physically abuse Nancy at least five times that she could recall. Tina supported Nancy's testimony that Robert used Nancy's vehicle to exert power over her. If Nancy did not act to Robert's liking, he would take away her vehicle. Tina believed Robert wanted to discover Nancy's location after the court granted her an emergency order of protection in June 2018. Robert came over three to four times a day looking for Nancy. He did the same with his other children. Days before the hearing, Robert told Tina that there was still hope for his relationship with Nancy; he would not give up.

¶ 9    Finally, Robert took the stand. Since Nancy initiated these proceedings, he filed for divorce. Robert either outright denied all of Nancy's allegations or claims that she mischaracterized them to the court.

¶ 10    The circuit court granted Nancy's petition for a plenary order of protection. In the oral ruling, the court stated:

"Well, I think that one of the things I have to look at is credibility. And I found that, you know, that the daughter especially was very credible. She testified to the fact that there had been constant abuse. And it doesn't mean physical. You can be with somebody a hundred years and not ever touch them but mentally abuse them.

And I can't begin to explain why women or men stay in abusive relationships. *** I believe that there was abuse here. And it is not because of an incident that happened 40 years ago or 35 years ago. It is the fact that there was testimony *** that it began then but it just escalated or began to escalate this year. I mean, he continued to do those kind of things.

I do believe that he used the car to take control. And after she moved out—and I can understand a husband wanting to search for his wife when she hasn't appeared. But once he was told to leave her alone, he continued, which to me just was an extension of that abuse. He just doesn't accept.

And he comes here and he testifies to I didn't do this, everybody else are liars. Only he's telling the truth. I found the wife very credible and I found the daughter very— more than credible.

So I am going to extend the order of protection for two years.

Sir, your marriage is over. Stay away from her or I will put you in jail. Do you understand me?"

The court also issued a written order of protection. In the findings section, the court indicated it found Robert abused Nancy, the abuse was likely to continue in the absence of the order of protection, and the order of protection was necessary to protect Nancy. These findings were part of a 14-page order of protection form approved by the Conference of Circuit Court Judges.

¶ 11                                II. ANALYSIS

¶ 12    Robert appeals the court's order, arguing the court failed to satisfy the statutory requirements and made findings against the manifest weight of the evidence.

¶ 13                        A. Statutory Requirements

¶ 14    Robert contends that the court failed to satisfy the statutory requirements of the Illinois Domestic Violence Act of 1986 (Act) by failing to find that (1) Robert's conduct, unless prohibited, is likely to cause irreparable harm or continued abuse and (2) the order of protection is necessary to protect Nancy. 750 ILCS 60/214(c)(3)(ii), (iii) (West 2016).

¶ 15    The Act aims to protect victims of domestic violence from further acts of physical, emotional, and verbal abuse. *Id.* To issue an order of protection, the court must find that the respondent abused the petitioner. *Best v. Best*, 223 Ill. 2d 342, 348 (2006). If the court makes a finding of abuse, the court is required to make certain findings in "an official record or in writing" prior to issuing an order of protection. 750 ILCS 60/214(c)(3) (West 2016). The official record or written order must show that the court considered the "relevant factors" that the Act defines as:

> "the nature, frequency, severity, pattern and consequences of the respondent's past abuse, neglect or exploitation of the petitioner or any family or household member, including the concealment of his or her location in order to evade service of process or notice, and the likelihood of danger of future abuse, neglect, or exploitation to petitioner or any member of petitioner's or respondent's family or household[.]" *Id.* § 214(c)(1)(i).

¶ 16    After the court considers the relevant factors, section 214(c)(3)(ii) requires an oral or written finding that "the conduct or actions of respondent, unless prohibited, will likely cause irreparable harm or continued abuse." *Id.* § 214(c)(3)(ii). Section 214(c)(3)(iii) requires an oral or written finding that it is "necessary to grant the requested relief in order to protect petitioner." *Id.* § 214(c)(3)(iii). We will reverse the trial court's entry of an order of protection if it fails to make the required findings. *People ex rel. Minteer v. Kozin*, 297 Ill. App. 3d 1038, 1043 (1998).

¶ 17    A similar issue recently came up in *Landmann v. Landmann*, 2019 IL App (5th) 180137. After a hearing for a plenary order of protection, the court, in its oral ruling, stated that it " 'heard the evidence [and] considered the credibility of the witnesses.' " *Id.* ¶ 7. The court also issued a written ruling using a preprinted form to indicate that irreparable harm was likely to continue in the absence of the order of protection and that the order was necessary. *Id.* ¶ 17. The reviewing court stated this action "satisf[ied] sections 214(c)(3)(ii) and (iii)." *Id.*

¶ 18    Here, the court complied with sections 214(c)(3)(ii) and (iii) in its written order. Although Robert characterizes his issue on appeal as compliance with section 214(c)(3), the substance

of his argument challenges section 214(c)(1). He contends that the circuit court failed to consider the relevant factors in its oral and written judgment. The record belies this contention. In issuing its oral ruling, the court stated it found Nancy's and Tina's testimony to be credible. Nancy and Tina described a history of abuse that spanned decades. Robert first became physical with Nancy when he broke her eye socket in 1979. Tina testified that she remembered another five instances of Robert physically abusing Nancy. Nancy and Tina told the court how Robert would use Nancy's vehicle to exert power over her, whether that be through disabling the vehicle or taking her keys. Nancy described Robert's practice of publicly humiliating her and privately threatening to harm or kill her. Nancy genuinely feared for her life. Robert tracked her movements through GPS devices and monitoring her schedule. Nancy could not escape, even at work, as Robert would show up and harass her. Even after the court issued an emergency order of protection, Robert continued to try to track Nancy down. The court did not find Robert credible, meaning the court found his denials and explanations to be an attempt to obfuscate the issue. The court noted the persistent nature of the abuse that had recently escalated. Robert's argument is unavailing. The circuit court complied with the statutory requirements by noting the nature, frequency, severity, and pattern of Robert's abuse.

¶ 19                                B. Finding of Abuse

¶ 20      Lastly, Robert contends that the circuit court erred in issuing a plenary order of protection because its finding of abuse was against the manifest weight of the evidence. He claims Nancy failed to establish that he abused her or is likely to abuse her by a preponderance of the evidence. His argument is undeveloped and lacks citations to the record or relevant authority in violation of Illinois Supreme Court Rule 341(h)(7) (eff. May 25, 2018). This court is "entitled to have issues clearly defined with pertinent authority cited and cohesive arguments presented [citation], and it is not a repository into which an appellant may foist the burden of argument and research." *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993). Accordingly, we have the authority to hold that defendant has forfeited his argument by failing to develop it or cite any authority to support it.

¶ 21                                III. CONCLUSION

¶ 22      For the foregoing reasons, we affirm the judgment of the circuit court of Will County.

¶ 23      Affirmed.