BELINDA PECK, Plaintiff-Appellee, v. KEVIN OTTEN, Defendant-Appellant.

Third District No. 3—01—0356

Opinion filed April 15, 2002.

HOLDRIDGE, J., dissenting.

Daniel G. O'Day, of Cusack, Fleming, Gilfillan & O'Day, P.C., of Peoria, for appellant.

No brief filed for appellee.

JUSTICE HOMER delivered the opinion of the court:

The defendant, Kevin Otten, appeals from the entry of a plenary order of protection against him obtained by his ex-wife, Belinda Peck, on behalf of their minor son, Cory. On appeal, he argues that the trial court's finding of "abuse" was against the manifest weight of the evidence and an abuse of the court's discretion. We affirm in part, reverse in part and remand.

## FACTS

The parties were divorced in August 1995. During their marriage, they had one son, Cory, born in December of 1988. At the time of their divorce, the parties agreed to joint custody of Cory with Belinda being the residential parent. A stipulated modification order was entered in March 2000 in which Kevin and Belinda agreed to joint custody of Cory with Kevin being the residential parent.

On March 12, 2001, Belinda filed a petition for an order of protection on behalf of Cory, alleging that Kevin had abused Cory. Specifically, the petition claimed that: (1) Kevin has been coming home drunk and destroying Cory's personal belongings; and (2) Kevin grabbed Cory after he had been drinking. An emergency order of protection was granted that same day.

A plenary order of protection hearing was held on April 2, 2001. According to the bystander's report, the evidence at the hearing showed that on March 8, Kevin told Cory that he was going out at approximately 8 p.m. and instructed Cory to clean the house and finish his homework. Kevin returned home around 12:30 a.m. He had been drinking. When he arrived home, he discovered that Cory had not cleaned the house or completed his homework. Kevin awakened Cory. In his anger, Kevin grabbed a pool cue that he had given Cory and broke it. He told Cory that if he did not have time to do his homework and the housework, he did not need to be playing pool.

Cory testified that his father would often not come home from work but instead would go to the tavern right after work. Cory also stated that his father "would always wake him up when he came home from drinking and would break things and throw things."

The trial court found that Kevin committed abuse and entered a plenary order of protection prohibiting Kevin from having any contact with Cory. The order did not specify a termination date.

## ANALYSIS

■ Initially, we note that an appellee's brief was not filed in this case. However, since the record is simple and the issue can be decided without an appellee's brief, we will address Kevin's issue on the merits. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133, 345 N.E.2d 493, 495 (1976).

On appeal, Kevin argues that the protective order was not supported by the evidence or, in the alternative, was an abuse of the trial court's discretion.

■ Although there is some support for utilizing the manifest weight standard of review, most appellate courts review findings of abuse under an abuse of discretion standard. *Wilson v. Jackson*, 312

Ill. App. 3d 1156, 1165, 728 N.E.2d 832, 839 (2000). An abuse of discretion occurs when no reasonable person would take the view adopted by the court. *Wilson*, 312 Ill. App. 3d at 1165, 728 N.E.2d at 839.

The Illinois Domestic Violence Act of 1986 (Act) (750 ILCS 60/101 *et seq.* (West 2000)) provides that protective orders may be entered against persons who have abused a minor child in their care. 750 ILCS 60/201(b)(i) (West 2000). The Act's definition of "abuse" includes physical abuse, harassment, or intimidation of a minor child but does not include the "reasonable direction of a minor child by a parent." 750 ILCS 60/103(1) (West 2000).

Following our careful review, we find that the trial court did not abuse its discretion in finding that Kevin's conduct constituted "abuse." We believe that a reasonable person could conclude that Kevin's treatment of Cory was "abuse" because it constituted "harassment" as defined by the Act.

"Harassment" is defined as "knowing conduct which is not necessary to accomplish a purpose that is reasonable under the circumstances; would cause a reasonable person emotional distress; and does cause emotional distress" to the child. 750 ILCS 60/103(7) (West 2000). We conclude that Kevin's actions were unnecessary and of such a nature to cause a reasonable person to feel emotional distress and did in fact cause 12-year-old Cory to feel emotional distress.

Significantly, the evidence showed that this was not an isolated incident. The bystander's report indicates that Cory stated that his father "would always wake him up when he came home from drinking and would break things and throw things." Such conduct is sufficient to justify a finding of abuse.

Even though there is no indication that Kevin's actions created an immediate risk of physical harm to Cory, they still constituted "abuse." There need not be any physical acts of violence in order for actions to constitute "harassment" under the Act. *In re Marriage of Healy*, 263 Ill. App. 3d 596, 599-600, 635 N.E.2d 666, 669 (1994). Consequently, we affirm the trial court's finding of abuse and hold that the trial court properly issued a plenary order under the Act. 750 ILCS 60/214(a) (West 2000).

However, we conclude that the trial court abused its discretion by entering a plenary order without a termination date that prohibited Kevin from having any contact with his son. Section 220 of the Act provides that a plenary order of protection shall be valid for a fixed period of time, not to exceed two years. 750 ILCS 60/220 (West 2000). When a court does not state a termination date, the order automatically expires in two years. *Gasaway v. Gasaway*, 246 Ill. App. 3d 531, 537, 616 N.E.2d 610, 614 (1993). Under the circumstances here, where

Kevin is completely deprived of any contact with his son for two years, we conclude that the trial court should have set a reasonable limit on the duration of the order or fashioned a less severe remedy that would protect Cory while still allowing Kevin to retain some kind of relationship with his son.

Section 214(b) of the Act provides remedies that can be included in an order of protection, such as counseling and visitation. 750 ILCS 60/214(b) (West 2000). We remand so that the trial court can issue an order of protection with appropriate conditions that will not deprive Kevin of all contact with his son.

For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed in part, reversed in part and remanded.

Affirmed in part, reversed in part and remanded.

BRESLIN, J., concurs.

JUSTICE HOLDRIDGE, dissenting:

The majority's attempt to justify an order of protection against Kevin evokes the observation of Professor Harold Hill in the popular musical, The Music Man: "We've got trouble—right here in River City—with a capital 'T'—and that rhymes with 'P'—and that stands for Pool!" The evidence of record does not support the majority's finding that Kevin committed abuse by harassment when he broke Cory's pool cue.

First, I believe Kevin's conduct falls within the statutory exception for "reasonable direction of a minor child by a parent." 750 ILCS 60/103(1) (West 2000). Kevin was providing direction when he awakened Cory and broke the pool cue. The object of his action was to instill in Cory the importance of homework and household chores vis-a-vis recreational activities. There is no evidence that he struck, or even touched, Cory. His action reflects a desire to teach an important lesson in a memorable manner without causing harm—arguably a less expensive lesson than enrolling Cory in a community band! The action was reasonable.

Second, the statutory definition of "harassment" requires conduct that "would cause a reasonable person emotional distress[ ] and does cause emotional distress to the petitioner." 750 ILCS 60/103(7) (West 2000). I seriously question whether Kevin's conduct would cause a reasonable person to suffer emotional distress. In any event, however, the record contains absolutely no evidence that Cory actually suffered emotional distress.

The majority relies essentially on its own conclusory statements to

support its contrary finding. Indeed, the majority only musters one evidentiary fact in its analysis—Cory's statement that Kevin "would always wake him up when he came home from drinking and would break things and throw things." That fact does not even address how Cory felt about Kevin's conduct. How then can the majority conclude that Cory was emotionally distressed? The conclusion is wholly unsubstantiated by the evidence of record.

Regardless of how one personally feels about Kevin's conduct, he should not be subjected to an order of protection unless the State proves every element of its case. Since the State failed to do so here, I respectfully dissent.