KATHRYN RADKE, On Behalf of Laine Radke, Petitioner-Appellee, v. ROSS RADKE, Respondent-Appellant.

Third District   No. 3—03—0198

Opinion filed May 14, 2004.

William Keene, of Ottawa, for appellant.

Christy L. Meredith, of Stephens & Meredith, of Ottawa, for appellee.

JUSTICE SLATER delivered the opinion of the court:

The trial court granted the petitioner, Kathryn Radke, a plenary order of protection restraining the respondent, Ross Radke, from abusing, harassing, intimidating or interfering with the personal liberty of the parties' daughter. Ross appeals, contending that: (1) the trial court abused its discretion in granting the order of protection because the evidence did not support a finding of harassment; and (2) any action to restrict his contact should have been taken under the

existing dissolution action rather than by obtaining an order of protection. We reverse.

## FACTS

Kathryn was granted residential custody of the parties' 12-year-old daughter, Laine Radke, following the dissolution of their marriage. Ross was granted extensive visitation, including the first weekend of each month and every week from Tuesday through Thursday.

Kathryn filed a petition for an order of protection on behalf of Laine on January 9, 2003. Kathryn sought, among other things, an order prohibiting Ross from abusing, harassing or intimidating Laine. The trial court issued an emergency order of protection *ex parte*.

At the subsequent hearing on the petition, Laine testified that she went to her father's house for visitation on January 7, 2003. She informed Ross that she did not enjoy spending time at his home, and she wanted to go back to Kathryn's house. According to Laine, Ross told her that she was insane and he was going to take her to a hospital. Laine became afraid and tried to call Kathryn on the telephone. When she tried to make the phone call, Ross ripped the telephone off of the wall and told her that she was grounded. When questioned about her claim that the phone was "ripped" from the wall, Laine explained that there were three phones that "were all attached to one thing and he took the one thing all out." Laine later tried to use the phone three additional times to call her mother or the police, and each time her father unplugged the phone she tried to use.

Laine later left the house to walk back to her mother's house. According to Laine, Ross followed her outside, held her arms behind her back, pushed her in the door and pushed her into her room. Ross also tried to punch her twice, but she avoided contact by moving backward. Laine testified that she suffered a bruise on her arm as a result of this incident.

On cross-examination, Laine testified that she screamed and cursed during this incident. She believed that she had to curse and scream at Ross to communicate with him. She also kicked Ross in the groin, but claimed she did so in self-defense. Additionally, she testified that she had missed or cut short her visitation with Ross on several occasions in December 2002 and January 2003. The day after the incident, Laine went with her mother to the police station to make a complaint against her father. The police observed no bruises or marks on Laine. When asked why she wanted an order of protection, Laine responded that she did not want her father to touch her again and she wanted to be able to see him only when she wanted to see him. She felt that she had too much visitation with her father and she did not feel welcome at his home.

Laine's brother, Bryce Radke, testified that he observed a small bruise on Laine's arm after she returned from visitation. Kathryn testified that she observed a bruise on Laine's arm and swelling on her hand. Kathryn also testified that it was her idea to seek an order of protection, because Laine had begged her never to send her back to her father. Kathryn admitted that she used the order of protection to temporarily suspend visitation.

Ross's wife, Debbie Radke, testified that Laine screamed and cursed at Ross on January 7, 2003. Ross told Laine to go to her room and grounded her from using the telephone or the computer. Laine then tried to leave her room several times. At one point, Laine ran outside. Ross responded by escorting Laine back to her room by holding her arms. Laine kicked Ross while he was escorting her to her room. Debbie also testified that she and Ross had received several e-mails from Laine that contained profanity.

Debbie's son, Josh Williams, testified that he observed part of this incident. He testified that Laine kicked, hit and cursed at Ross. Ross unplugged the telephone and told Laine to go to her room, but he did not strike or kick Laine.

Ross testified that prior to the incident, he had allowed Laine to miss some visits at her request. On January 7, he told Laine that he would call the police to enforce the visitation if she did not come over. Laine's mother had done the same thing a year earlier when Laine had refused to go back to her mother's house. Laine had a history of being on good terms with only one parent and then switching preferences.

Ross further testified that after Laine arrived she became upset, cursed at him, and he told her to go to her room. She came back out of her room, told him that she was going home and continued to curse at him for several minutes. Ross refused to allow Laine to use the telephone to call Kathryn. Laine then kicked him in the groin and punched him in the face. Ross responded by placing his hand on Laine's back and pushing her down the hallway to her room.

Laine continued to leave her room to attempt to use the telephone. Ross unplugged the telephone and escorted her back to her room. Ross testified that he did not rip the telephone off of the wall or strike Laine.

Ross also testified that he tape-recorded the incident. After he told Laine that he was recording, Laine admitted that he had not hurt her. The audiotape was played during the hearing, but was not reported in the report of proceedings or admitted into evidence.

On rebuttal, Laine testified that Ross had previously slapped her because she did not give Debbie a present or call her on Mother's Day.

Laine testified that she suffered a "fat lip" as a result of this incident. During his testimony, Ross denied slapping Laine.

In rendering its decision, the trial court stated that issues of visitation would not be addressed in the order of protection. The court specifically noted that it would not restrict Ross's visitation, correctly recognizing that the purpose of an order of protection "is to protect, not to effectuate changes in visitation." The court found that Laine was "basically a very believable witness," but it did not make a specific finding of physical abuse. The court accepted Laine's testimony that physical force was used to prevent her from returning to her mother's house, but it also noted that "the statute says there can be reasonable directions of a child by a parent. I understand a parent has a right to punish a child." The court concluded that "when there's allegations of abuse, whether it be physical or emotional, the one thing that I don't think you can do is deny them access to their other parent or to the police by phone. If you want to punish them and say you can't call your friends on the phone, that's one thing. But when you tell them that you're denying them access to either their other parent or to the police, I think that's harassment under the statute." The court then entered a plenary order of protection requiring Ross to refrain from physical abuse, harassment, intimidation or interference with the personal liberty of Laine for two years from the date of the order.

## Analysis

Ross contends that the trial court abused its discretion in granting the order of protection because the evidence did not establish that he had harassed Laine. We agree.

■ The Illinois Domestic Violence Act of 1986 (Act) provides that protective orders may be entered against persons who have abused a child in their care. See 750 ILCS 60/214(a) (West 2002). "Abuse" is defined to include physical abuse, harassment, or intimidation of a child but does not include reasonable direction of a child by a parent. 750 ILCS 60/103(1) (West 2002). The Act defines "harassment" as knowing conduct which is not necessary to accomplish a purpose that is reasonable under the circumstances; would cause a reasonable person emotional distress; and does cause emotional distress to the person. 750 ILCS 60/103(7) (West 2002).

The court has broad discretion to decide whether abuse, as defined in the Act, occurred. *In re Marriage of Lichtenstein,* 263 Ill. App. 3d 266, 637 N.E.2d 1258 (1994). The trial court's decision will not be reversed on appeal absent an abuse of discretion. *Peck v. Otten,* 329 Ill. App. 3d 266, 768 N.E.2d 769 (2002); *Whitten v. Whitten,* 292 Ill. App. 3d 780, 686 N.E.2d 19 (1997).

■ In this case the trial court found that not allowing Laine to telephone her mother or the police constituted harassment. Under the Act, conduct is not harassment if it is necessary to accomplish a purpose that is reasonable under the circumstances. See 750 ILCS 60/103(7) (West 2002). Was it reasonable for Laine's father not to allow her to call her mother after she made it clear that she did not want to be there and wanted to go back to her mother's home? Laine only went to her father's home after he threatened to call the police to enforce visitation. Whether this was wise is not at issue, but it clearly contributed to an atmosphere ripe for conflict. Under those circumstances, Ross could have reasonably believed that allowing Laine to call her mother, perhaps to request her to come and pick her up, would only exacerbate the situation. Certainly, after Laine screamed and cursed at her father and kicked him in the groin, denying her use of the phone was not unreasonable. It was also justifiable as "reasonable direction" of a child, a circumstance specifically excluded from the definition of abuse under the Act. 750 ILCS 60/103(1) (West 2002).

*In re Marriage of Blitstein*, 212 Ill. App. 3d 124, 569 N.E.2d 1357 (1991), relied on by Kathryn, is clearly distinguishable. In *Blitstein* an order of protection based on harassment was upheld where the husband pulled three phone cords from the wall during the course of an argument to prevent his wife from calling the police. Conduct between spouses does not, of course, fall within the statutory exception for reasonable direction of a child. In addition, reasonable restrictions imposed by a parent on a child might be quite unreasonable in the context of an adult relationship.

We emphasize that we are not disturbing the trial court's factual findings; the court is in the best position to evaluate the credibility of the witnesses. *People ex rel. Minteer v. Kozin*, 297 Ill. App. 3d 1038, 697 N.E.2d 891 (1998). While the court found Laine to be "basically a very believable witness," it did not indicate that it was accepting her testimony in its entirety. Indeed, in making no finding of physical abuse, it appears to have implicitly rejected some of it. In any event, our ruling is based on a rejection of the trial court's legal conclusion that denying Laine the ability to use the phones, under the circumstances, constituted harassment.

Ross also contends that the order of protection should be vacated because any action to restrict his visitation with Laine should have been taken under the existing dissolution action rather than by obtaining an order of protection. We agree.

The primary purpose of the Domestic Violence Act is to aid victims of domestic violence and to prevent further violence. 750 ILCS 60/102 (West 2002); *Wilson v. Jackson*, 312 Ill. App. 3d 1156, 728 N.E.2d 832

(2000). Obtaining an order of protection is not the proper procedure for resolving child custody or visitation issues. Those issues should be resolved under the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/101 *et seq.* (West 2002)). *Wilson*, 312 Ill. App. 3d 1156, 728 N.E.2d 832, citing *In re Marriage of Gordon*, 233 Ill. App. 3d 617, 599 N.E.2d 1151 (1992).

In *Wilson*, this court found that the petitioner's primary purpose in seeking an order of protection was to obtain visitation and custody of his child rather than to prevent abuse. We vacated the order of protection granted by the trial court due to the petitioner's misuse of the Act, as well as insufficient evidence of abuse. *Wilson*, 312 Ill. App. 3d 1156, 728 N.E.2d 832.

In this case, Kathryn admitted that she obtained the order of protection to temporarily suspend visitation. Laine also indicated that the order of protection was sought so that she could see her father only when she wanted to see him. The Domestic Violence Act is not the appropriate vehicle for resolving such issues. We note that the order of protection did not restrict Ross's visitation or contact with Laine. The court narrowly drafted the order to prohibit physical abuse, harassment, interference with personal liberty or intimidation. Nevertheless, based on this record, we believe that Kathryn misused the Domestic Violence Act for the purpose of attempting to alter Ross's visitation with Laine. For that reason, and because we find that no harassment occurred, we reverse the judgment of the circuit court and vacate the order of protection.

## CONCLUSION

For the reasons stated above, the judgment of the circuit is reversed and the order of protection is vacated.

Reversed; order vacated.

HOLDRIDGE, P.J., concurs.

JUSTICE McDADE, dissenting:

After reviewing the facts of this case and the applicable law, I cannot find that the trial judge abused his discretion and I would affirm the decision. I, therefore, respectfully dissent from the majority opinion, which finds that there was such an abuse by the court.

At issue in this appeal is whether the court abused its discretion when it, in essence, converted an earlier *ex parte* order of protection to a plenary order following an evidentiary hearing. The majority finds (1) there was no harassment by Ross Radke that would warrant such

an action by the court, and (2) because Laine and her mother, Kathryn, had an improper purpose in seeking the original order, the court's entry of an order prohibiting harassment must be set aside, even though it was grounded in evidence adduced at a full hearing and it rejected any restriction on respondent's visitation.

Even a cursory reading of the facts clearly, in my opinion, demonstrates that neither Ross nor Laine Radke was acting reasonably. The girl freely admitted that she screamed, cursed, and kicked at her father during the visitation incident because she wanted to go home. The father, after letting such conduct continue without disciplinary efforts for several months, apparently decided to cure Laine's problems all at once through the use of threats and intimidation. Neither was behaving appropriately in my view. Irrational conduct of a 12-year-old girl, while it cannot be condoned, is easier to understand and to explain than is that of her adult father.

Looking only at Ross's testimony, he admitted to threatening to call the police if Laine did not come for her scheduled visitation on January 7, 2003; admitted to refusing to let her use the phone to call her mother or the police; admitted to disabling the phones by disconnecting them from their wall outlets; admitted to threatening Laine that he could hit her if he wanted because he was a black belt; and admitted to pushing her down the hallway but denied throwing her across the room.

When you add Laine's version of events, which the trial judge found to be credible, you end up with conduct that I do not believe can be fairly characterized as "reasonable direction" to a child. Nor, accepting the correctness of the trial court's assessment of Laine's credibility, does it appear that Ross and his new wife gave due or fair consideration to Laine's complaints of unkindness and lack of respect when she was in their home.

So, does any of this support the trial court's finding that Laine was "harassed" by her father? I believe it does. The Illinois Domestic Violence Act protects against "abuse," which includes physical abuse, harassment, or intimidation. "Harassment" is defined as knowing conduct that is not necessary to accomplish a reasonable purpose under the circumstances, would cause a reasonable person to feel distress, and does cause distress to the person. 750 ILCS 60/103 (7) (West 2002). A rebuttable presumption of emotional distress arises when a respondent improperly conceals a child from the petitioner or *threatens physical force, confinement or restraint*. 750 ILCS 60/103 (7) (v), (vi) (West 2002).

The court heard all of the evidence and made a determination, which we cannot dispute, that Laine's testimony was credible. The

judge apparently credited her allegations that her father told her that she was insane and that he was going to take her to a hospital; that this threat frightened her and she tried to call her mother; that he repeatedly prevented her from making the calls; that, when she left the house, he held her arms behind her back, pushed her into a door and pushed her into her room; that he tried to punch her twice, and that she suffered a bruise on her arm during this incident; and that he had slapped her on a previous occasion, causing an injury to her lip.

A reasonable person could conclude that these actions were not necessary to accomplish the purpose of disciplining Laine. In particular, the court could (and did) conclude that denial of the use of the telephone to call her mother or police officers was not necessary to accomplish this purpose. Additionally, a reasonable person could conclude that telling Laine that she was insane, disconnecting (or ripping out) the phones, and trying (or threatening) to punch her were not actions necessary to discipline a 12-year-old child—even an offensive and obstreperous one.

In sum, a reasonable person could conclude that Ross's actions constituted harassment as that term is defined by the Act. *Cf. Peck v. Otten*, 329 Ill. App. 3d 266, 768 N.E.2d 769 (2002); *In re Marriage of Blitstein*, 212 Ill. App. 3d 124, 569 N.E.2d 1357 (1991). Accordingly, I would find that the trial court did not abuse its discretion in entering the order of protection against Ross. The majority has rejected *Blitstein* as irrelevant because the participants in the domestic conflict in that case were a husband and wife, not a father and daughter. While the case is certainly factually distinguishable on that basis, it does not necessarily follow that its basic principle does not apply. The refusal to allow any frightened family member—even a child—access to a protector, particularly the other parent, could be reasonably characterized as harassment under the domestic violence statute, and I do not believe that the decision of the trial judge to that effect constitutes an abuse of discretion.

The challenge Ross has asserted to the entry of the plenary order of protection presents questions that are, for me, more troubling. It is clear from her own testimony that Laine wanted the order of protection as an instrument to remove any future obligation to have visitation in her father's home unless she wanted to go. In some contrast, Kathryn testified that she obtained and used the interim protective order to keep Laine and her father separated between the date of its entry and January 30. It appears, if her testimony is credited, that she was seeking a cooling-off period because of the conduct involved in the incident, not an end to visitation. Nonetheless, her use of the domestic violence statute to accomplish that end was no more appropriate than

its use to further the goal of her daughter. The trial judge firmly and quite properly found that the motives of both petitioners created an abuse of the statute.

It is also of major concern that orders of protection are confrontational and divisive in nature and they should not be commonly or routinely employed in matters involving the discipline of children. Having said that, however, there certainly may be situations—hopefully rare—where the use of such an order would be appropriate.

Turning to the specifics of this case, it appears to me that, if we accept the credibility determination of the trial judge, the court's actual conclusion that there was harassment and that the plenary order was warranted could not be found to be either unreasonable or an abuse of discretion. The majority argues that the trial court implicitly rejected some of Laine's testimony because it did not make an explicit finding of physical abuse. It appears to me, however, that the judge, by finding that prohibiting the girl's use of the phone was harassment in light of her allegations, at least implicitly credited those allegations. At any rate, the statute does not require that the trial court find both physical abuse and harassment—the cognizable forms of abuse justifying an order of protection are stated in the disjunctive.

The majority also asserts that the plenary order should not be affirmed because of the petitioners' wrongful purpose in seeking the *ex parte* interim order of protection. I would agree with that position if the court had merely converted the order based on the petitioners' original representations. It did not, however. It had a full-fledged evidentiary hearing and made its decision based on the testimony of all of the relevant actors and spectators. It is unfortunate to inject an order of protection into relations between parents and children. I would suggest, however, that it would be irresponsible for the trial court, in the face of its belief that the conduct at issue posed some threat to the child if allowed to continue or recur, to refuse to order protection for her because the interim order was improperly motivated. The plenary order does not have any impact on the right of the father to the extensive visitation he has previously enjoyed nor does it give Laine the ability to pick and choose whether or when she will spend time with her father in his home. It also does not enjoin Ross from any conduct with respect to his daughter that would not be inappropriate even without the order.

In the trial court's order, I see a concerned and restrained response to volatile conduct in an uncontrolled family situation; I do not see an abuse of discretion. I would affirm.