2022 IL App (1st) 210730-U

No. 1-21-0730

Order filed March 9, 2022

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | |
|---|---|
| *In re* MARRIAGE OF | ) |
| | ) Appeal from the |
| STEVE FANADY, | ) Circuit Court of |
| | ) Cook County. |
| Petitioner-Appellant, | ) |
| | ) No. 18 D 008662 |
| and | ) |
| | ) Honorable |
| GINA DEMKE FANADY, | ) Daniel A Trevino, |
| | ) Judge Presiding. |
| Respondent-Appellee. | ) |

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice Gordon and Justice Ellis concurred in the judgment.

**ORDER**

¶ 1   *Held*:   We find that we lack jurisdiction to consider appellant's arguments concerning the trial court's transfer orders, and that the issues raised concerning those orders are moot; we further find that the court did not err in entering an order of protection temporarily transferring the custody the parties' minor child to appellee and suspending appellant's parenting time.

¶ 2   This appeal comes before this court following the circuit court's entry of an order of

protection in favor of appellee Gina Demke Fanady (Gina) and against appellant Steve Fanady

(Steve). In the order of protection, the court granted Gina, among other things, temporary custody of the parties' minor child, S.F., and suspended Steve's parenting time. This court has previously affirmed the circuit court's entry of a judgment for the dissolution of the parties' marriage (Dissolution Judgment) and a judgment allocating parental responsibilities and establishing a parenting plan for S.F. (Allocation Judgment). See *In re Marriage of Fanady*, 2022 IL App (1st) 201100-U (unpublished order under Supreme Court Rule 23).

¶ 3    The record shows that despite the court ordering a 50/50 split of parenting time in the Allocation Judgment, Gina had not had parenting time with S.F. since December 2020. Gina filed a series of emergency motions in June and July 2021 seeking orders from the court requiring Steve to transfer S.F. to Gina for her parenting time. After S.F. was not transferred to Gina in accordance with those orders, Gina filed an emergency motion for an order of protection for herself and S.F. against Steve. Following a hearing, the court granted the order of protection, and ordered that S.F. be transferred to Gina. The court also denied Steve parenting time until the order of protection ended on January 31, 2022.

¶ 4    On appeal, Steve contends that the court erred in transferring custody of S.F. to Gina through an "abuse" of the Illinois Domestic Violence Act (Act) (750 ILCS 60/101 *et seq.* (West 2020)). Steve asserts that the court should have determined whether the transfer of custody was warranted pursuant to the terms of the Illinois Marriage and Dissolution of Marriage Act (IMDMA) (750 ILCS 5/101 *et seq.* (West 2020)). Steve further contends that the court applied the wrong standard in determining whether the transfer was warranted because the court did not consider the best interests of the child. Steve also asserts that the court also erred in failing to consider the best interests of the child in ordering the transfer of S.F. in the June and July orders.

Steve maintains that we should therefore vacate the transfer orders and the order of protection. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 5                                    I. BACKGROUND

¶ 6     For a full background of the parties' Dissolution Judgment and the Allocation Judgment, see this court's order on the parties' previous appeal. *In re Marriage of Fanady*, 2022 IL App (1st) 201100-U (unpublished order under Supreme Court Rule 23). As relevant here, pursuant to the parties' Allocation Judgment, entered on September 18, 2020, the parties were to share 50/50 parenting time with S.F. The Allocation Judgment provided for specific dates for each parties' parenting time.

¶ 7                                 A. The Transfer Orders

¶ 8     On June 14, 2021, Gina filed an "Emergency Motion to Transfer Minor Child to Mother Instanter Until Further Order of Court." In the motion, Gina alleged that Steve had failed to comply with the Allocation Judgment. Gina noted that in "summer 2020," based on the Child Representative's investigation into the failure to transfer S.F. to Gina, Gina was permitted to have supervised visitation with S.F. for one month. The court appointed a social worker to supervise the visitations. Gina represented that despite this order, the last time she saw S.F. was December 22, 2020. Gina alleged that Steve restricted her access to S.F., and did not allow her to talk to S.F. on the phone. Gina asserted that she had not spoken to S.F. since May 26, 2021. Gina contacted the Northbrook police department to conduct a wellbeing check at Steve's home, but they were unable to contact S.F. Northbrook police were eventually able to locate S.F. in Skokie, Illinois, where she was with Steve's parents, S.F.'s paternal grandparents. Gina also alleged that Steve was not presently with the child and was outside the jurisdiction attempting to evade a body attachment order that had been entered against him in an unrelated case.

¶ 9      The court held a hearing on Gina's emergency motion. At the hearing, conducted by Zoom, Gina testified that she did not know where Steve was, and she did not believe that S.F. was currently with Steve. Gina noted that under the Allocation Judgment, she has the right of first refusal if Steve is unable to conduct his parenting time. She testified that she had not exercised her right of first refusal. She testified that she attempted to contact Steve every day, but had been unable to reach him or S.F.

¶ 10      Steve testified regarding allegations of abuse by Gina against S.F. Steve testified that S.F. refused to go with Gina for parenting time. Steve testified that S.F. was afraid of Gina. On cross-examination, Gina's counsel asked Steve if he was at his lawyer's office. Steve responded that he was not going to answer questions about his current location for his "physical safety." The court ordered Steve to answer the question regarding his location or he would be found in contempt. Steve responded that he was not at his lawyer's office, but refused to state his specific location. Steve's counsel stated that "there's a body attachment that's outstanding currently against Mr. Fanady. I believe what he's trying to do is plead the Fifth [Amendment] based on the body attachment." The court asked if Steve intended to assert the Fifth Amendment and Steve replied: "I'm going to take the Fifth on that, yes." When the court asked if Steve was in the State of Illinois, Steve once again responded that he was "going to take the Fifth Amendment, Judge." The court then held Steve in contempt of court based on his refusal to disclose his location. The court stated that it believed Steve should be held in criminal contempt.[1]

---

[1]Following the court's entry of the order of criminal contempt, Steve filed a notice of appeal. This court entered an order on July 8, 2021, finding that the contempt order was civil in nature, not criminal. *In re the Marriage of Fanady*, No. 1-21-0706 (Summary Order). The court therefore found that the order was in substance an order for direct civil contempt. *Id.* On July 12, the circuit court entered an order on its own motion quashing and recalling all warrants issued in the criminal contempt case and recalling the body attachment order. The court also entered a written order dismissing the criminal case based on the finding of contempt, and entered a body attachment order for civil contempt.

¶ 11  The court granted Gina's emergency petition and ordered the transfer of S.F. to Gina *instanter* to resume Gina's next scheduled parenting time. The court stated that the transfer should take place at the Northbrook police department and should be executed by Steve because he indicated that S.F. was with him in his possession. The court found that Steve intentionally violated the terms of the Allocation Judgment and concealed S.F.'s location from Gina.

¶ 12  The court entered a written order on the emergency motion two days after the hearing, on June 17. The written order provided that the parties, along with the child representative, would agree to a time, place, and manner for the transfer of S.F. If the parties could not reach an agreement by 5 p.m. on June 17, the order provided that S.F. would be delivered to the Northbrook police department where she would stay with their staff counselor until Gina arrived to take possession of her. The order provided that no one could use physical force to effectuate the transfer, including Steve, Gina, or the Northbrook police officers. The order provided that the transfer of possession was a temporary order, and that the next court date was June 28. The order further directed the child representative to contact the child's therapist to arrange for additional therapy for S.F. to facilitate a non-traumatic transfer of possession. The court also noted in the order that on May 14, 2021, it appointed a reunification therapist. The order granted Steve and Gina leave to contact the reunification therapist for initiating paperwork and scheduling therapy sessions.

¶ 13  On June 21, Gina filed an emergency rule to show cause against Steve for failing to transfer S.F. on June 18. In the petition, Gina alleged that, contrary to the June 17 order, when she arrived at the Northbrook police station, S.F. was not present. That same day, Steve filed a notice of appeal pursuant to Supreme Court Rule 304(b)(6) asserting that the June 17, 2021, order modified the Allocation Judgment.

¶ 14    The emergency motion judge held a hearing on Gina's emergency rule to show cause on June 22 over Zoom. Prior to this hearing, Judge Daniel Trevino had primarily presided over the parties' dissolution proceeding, but the record indicates the Judge Trevino was unavailable at the time of the hearing. After a hearing, the emergency motion judge entered a second order directing Steve to transfer S.F. to Gina. The emergency motion judge indicated that she wanted to style the order exactly the same as Judge Trevino's previous order. As such, the order provided that Steve was to transfer S.F. to Gina on June 24 by leaving S.F. at the Northbrook police department with a staff counselor. Afterwards, Gina would arrive and take possession of S.F. The order also contained the same provisions as the June 17 order, including that no one would use physical force to effectuate the transfer, that the child representative would contact the child's therapist to facilitate the transfer, and that the transfer of possession was temporary until further order of court.

¶ 15    On June 24, Gina filed another emergency rule to show cause against Steve for failing to transfer S.F. as directed in the June 22 order. In the petition, Gina alleged that prior to the transfer, she contacted S.F. by phone who told her that she did not want to go with Gina and hung up the phone. When Gina arrived at the Northbrook police department for the transfer, S.F. was not present. "Gina alleged that she went with police to Steve's parents' house in Northbrook, Illinois. There, she saw Steve's parents with S.F. Steve's father told the police officers that Steve was 'in Europe on business.' " Gina alleged Steve's parents "did not attempt to comply" with the June 22 order, even when police officers presented a copy of the order to them. Gina alleged that Steve's whereabouts were unknown and he appeared to have "abandoned" the child with his parents.

¶ 16    The court held a hearing, again conducted by Zoom, on the motion on June 28. Despite the court's order that everyone appear on Zoom with the video feature activated, Steve called into the

hearing from a landline telephone, and represented that he did not have internet access at his location.

¶ 17    Steve again represented that S.F. did not want to be transferred to Gina. The court stated that it was "at a loss" for how to proceed because the previous transfer orders had not been complied with. The court observed that Steve had stated that he was not physically with the child. "That in and of itself provides a basis for this child to be with her mother and not some third parties who are not parties to this case." The court therefore entered an order that S.F. was to be transferred the next day, June 29. The court stated that the order would contain substantially similar language to the previous two orders entered on June 17 and June 22. The court also indicated that it would include in the order that Steve's parents are not S.F.'s legal guardians. In its written order, the court found that it was in S.F.'s "best interests that she be transferred to [Gina] who is her mother and who has 50/50 parenting time (i.e. joint custody) under the operative Allocation Judgment."

¶ 18    Steve subsequently filed an amended notice of appeal pursuant to Supreme Court Rule 304(b)(6) noticing both the orders of June 17, 2021, and June 28, 2021.

¶ 19    On July 6, 2021, Gina filed a "Second Emergency Motion for a Rule to Show Cause for Petitioner's Failure to Return Minor Child to Mother." In the motion, Gina asserted that Steve once again failed to transfer S.F. on June 29, and S.F. remained in the care of Steve's parents. Gina contended that the Northbrook police attempted to effectuate the transfer from Steve's parents, but Steve's parents refused to comply.

¶ 20    The court entered an order on Gina's second emergency motion on July 9. The written order indicates that the order was entered following a remote hearing, and that a court reporter was present for this hearing. However, there is no transcript from this hearing included in the record filed on appeal. Nonetheless, in its written order, the court again found that Steve failed to transfer

S.F. as required by the three previous transfer orders. The court indicated that based on information provided to the court, it believed that Steve "may have physically left the State of Illinois and may have left the United States." The court found that there was a potential for abuse and delay in the litigation based on Steve's refusal to comply with court orders and Steve's refusal to comply with orders regarding remote appearance procedures. The court therefore granted Gina's motion for rule to show cause.

¶ 21    The court also ordered that all future court hearings in this matter would be conducted in person. The court ordered all parties to appear for an in person hearing on July 19, including S.F. The court stated that the failure to produce S.F. at the hearing would result in a court order allowing Gina to use the assistance of local law enforcement to remove S.F. from Steve's possession or the possession of Steve's parents or agents, and transfer her to Gina.

¶ 22    The record indicates that consistent with the July 9 order, the court held an in-person hearing on July 19. The court had ordered Steve to appear in court in person on July 19, and also ordered S.F. to appear in court on July 19 as facilitated by Steve, his parents, or another third party currently in possession of S.F. The record suggests that an in-person hearing took place on July 19, and the court entered another transfer order directing Steve to transfer S.F. to Gina. There is, however, no report of proceedings from a July 19 hearing contained in the record filed on appeal. There is also no written transfer order entered on that date included in the record. The only order appearing in the record relating to the July 19 hearing is an order of adjudication of indirect civil contempt against Steve for his failure to comply with the July 9 transfer order.

¶ 23                    B. Order of Protection

¶ 24    On July 21, Gina filed an emergency motion for an order of protection for herself and for S.F. In the emergency motion, Gina sought an order of protection "to effectuate the intent of this

court's transfer order of July 19, 2021." Gina alleged that the "current posture of law enforcement requires an Order of Protection in order to effectuate the intent" of the July 19 order. Gina asked the court to enter a plenary order of protection providing for the removal of S.F., which were "the terms that the Sheriff needs for enforcement." Gina also asked that the court prohibit contact between S.F. and Steve or Steve's parents. The court held an in-person hearing on Gina's motion for an order of protection on July 30. Steve, who was at this time appearing *pro se*, was not present.

¶ 25    At the hearing, Gina testified that the court had previously entered orders transferring S.F. to her in June and July. Gina testified that she did not know where Steve was during this period of time and that S.F. was living with her paternal grandparents. Gina testified that on June 19, she arrived at S.F.'s paternal grandparents' home in Northbrook, Illinois with officers from the Northbrook police department. The home was "covered with black film" and there were cameras around the house. Gina testified that the grandparents refused to comply with the transfer order. Gina testified that pursuant to the July 19 court order she went to the paternal grandparents' Northbrook home on July 20.

¶ 26    Gina testified that she spoke to the Cook County Sheriff's Office who informed her that in order to enforce the transfer order, she would have to obtain an order of protection. Gina testified that she had not seen S.F. since December 2020. Gina testified that she had limited conversations with S.F. over the telephone.

¶ 27    Gina testified that as of the date of the hearing, she knew that S.F. was in Illinois, but she did not know where in Illinois. Gina did not know where Steve was and she had not been able to contact him despite attempting to contact him through email.

¶ 28    Gina testified that she was concerned that the order of protection was the only way she would see S.F., but she testified that was only "part" of the reason she sought the order. Gina

testified that she feared for herself and for S.F. Gina explained that over the course of the dissolution proceedings, she had "been subjected to multiple private investigators *** had multiple devices put on [her] car," and Steve had contacted her "family members and friends, coworkers, boss, and executive director," which led to her losing her job. Gina testified that these circumstances showed Steve's harassment under the Act. Gina testified that within the past six months, Steve had tried to intimidate her with regard to the matters pending in the appellate court.

¶ 29    Gina also testified about occasions where Steve would show up with S.F. at an "event" and cause a "disturbance." Gina testified that when she was parenting S.F., Steve would follow them in his car. Gina testified that Steve would plant "electronic devices" on S.F.'s clothing that she would bring to Gina's house. Gina testified that she was "fearful" of Steve and what he may do to her or S.F.

¶ 30    Gina testified that she believed the order of protection was necessary for her to raise S.F. to ensure that S.F. gets proper therapy. Gina noted that Steve had cancelled S.F.'s most recent appointment with her therapist. Gina testified she was "extremely afraid" that Steve would continue to create disturbances in S.F.'s life that would "disrupt her ability to have a normal life" and for Gina to have a job. Gina testified that she was asking the court to enter the order of protection so that she "can work and have a normal life."

¶ 31    In ruling on the petition, the court found that abuse had occurred under the definition of the Act. The court specifically found harassment had occurred in that Steve improperly concealed S.F. from Gina, and repeatedly threatened to improperly remove S.F. from the jurisdiction and from the physical care of Gina. The court found that it had heard credible testimony that S.F. was not in the physical care and possession of Steve, but was possibly in the care of her paternal

grandparents. The court found that concealment had occurred because S.F. had not been allowed to see Gina, and Gina had not been allowed to see S.F.

¶ 32    The court also found that physical abuse had occurred because the child was being confined. The court found S.F. was being confined to premises that were outside of her mother's residence. The court found that this also represented intimidation of a dependent due to the confinement in the residence of third persons and away from Gina. The court also found that there had been interference with personal liberty.

¶ 33    The court found that Gina and S.F. had been victims of abuse under the Act. The court determined that if it did not intervene, the abusive behavior would continue. The court therefore granted the plenary order of protection and entered it for a period of six months. The court also "denied/suspended" Steve's parenting time "until further order of court."

¶ 34    The court entered the order of protection against Steve and in favor of Gina and S.F. on July 30, 2021. The order provided that it would end on January 31, 2022. Under the provisions of the order, Steve was not permitted to abuse or threaten Gina and was ordered to stay away from her. The order also granted Gina physical care and possession of S.F. and ordered Steve to return S.F. to Gina. The court further ordered that Steve was not permitted to remove S.F. from Gina's care or from the care of a third party. The order further denied Steve's parenting time. Steve now appeals.

¶ 35                                    II. ANALYSIS

¶ 36    On appeal, Steve contends that the transfer orders entered in June and July 2021 were improper modifications of the parties' Allocation Judgment. Steve also asserts that the order of protection was an improper modification of the Allocation Judgment. Steve maintains that in entering these orders, the court failed to consider the best interests of S.F. Steve also contends that

the court erred in entering the order of protection because Gina sought the order of protection for the sole purpose of transferring custody, which is not a proper use of the Act.

¶ 37                              A. Jurisdiction

¶ 38    Before we may reach the merits of this appeal, we have an independent duty to consider whether we have jurisdiction to consider the appeal. *Department of Central Management Services v. American Federation of State, County & Municipal Employees*, 182 Ill. 2d 234, 238 (1998); *R.W. Dunteman Co. v. C/G Enterprises, Inc.*, 181 Ill. 2d 153, 159 (1998); *Ferguson v. Riverside Medical Center*, 111 Ill. 2d 436, 440 (1985). If we find that jurisdiction is lacking, we must dismiss the appeal. *Id.*

¶ 39    In his brief, and in his numerous notices of appeal, Steve contended that he was appealing the circuit court's orders pursuant to Illinois Supreme Court Rule 304(b)(6) (eff. Mar. 8, 2016). Under that section, a party is permitted to appeal "[a] custody or allocation of parental responsibilities judgment or modification of such judgment entered pursuant to the [IMDMA] or Illinois Parentage Act of 2015 (750 ILCS 46/101 *et seq*.)." Rule 304(b)(6) therefore extends to final orders that allocate parenting time and significant decision-making responsibilities and orders modifying those judgments. See *In re Marriage of Harris*, 2015 IL App (2d) 140616, ¶ 16. Steve contends that the transfer orders and order of protection in this case improperly modified the Allocation Judgment.

¶ 40    However, Rule 304(b)(6) is limited to *final orders* and "*permanent* determination[s] of custody." Ill. S. Ct. R. 304(b)(6), Committee Comments (adopted Feb. 26, 2010).  " 'An order is final and appealable if it terminates the litigation between the parties on the merits or disposes of the rights of the parties, either on the entire controversy or a separate part thereof.' " *In re Marriage of Gutman*, 232 Ill. 2d 145, 151 (2008) (quoting *R.W. Dunteman Co.*, 181 Ill. 2d at 159).

¶ 41    Here, the transfer orders entered in June and July 2021 were not final orders. Nor were they permanent determinations of custody. Each of the orders explicitly provided that they were temporary and served the sole purpose of transferring S.F. to Gina for her parenting time on specific dates as delineated in the Allocation Judgment. Thus, Rule 304(b)(6) does not provide a basis for this court's jurisdiction to consider the merits of the appeal related to those transfer orders. Moreover, the court's orders did not contain Rule 304(a) language to make them immediately appealable. See Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). Accordingly, we find that the transfer orders were not final and appealable orders.

¶ 42    We observe the order of protection, similarly, was not a permanent determination of custody entered incident to a dissolution of marriage or an order modifying child custody. Instead, the order of protection is temporary and has a set expiration date. After that expiration date, unless another order is entered, the Allocation Judgment would once again control the parties' parenting time. Thus, we would not have jurisdiction under Rule 304(b)(6) to consider this appeal. Although Rule 304(b)(6) is the only rule cited by Steve in his brief and his notices of appeal for the basis of jurisdiction, we are not deprived of jurisdiction by an appellant's citation to the wrong rule in a notice of appeal. See *O'Banner v. McDonald's Corp.*, 173 Ill. 2d 208, 211 (1996). Accordingly, we must determine whether Steve may appeal from the court's entry of the order of protection under a different supreme court rule.

¶ 43    This court has held that orders of protection are injunctive orders because they direct a person to refrain from doing something. See *Fricke v. Jones*, 2021 IL App (5th) 200044, ¶ 19 (citing *In re Marriage of Fischer*, 228 Ill. App. 3d 482, 486-87 (1992)). In the present case, the order of protection directed Steve to refrain from doing things, such as being in close proximity to Gina or taking possession of S.F. Rule 307(a)(1) provides that an appeal may be taken from an

interlocutory order "granting, modifying, refusing, dissolving, or refusing to dissolve or modify an *injunction*." Ill. S. Ct. R. 307(a)(1) (eff. Nov. 1, 2017). Thus, because Steve appeals from an interlocutory order granting an injunction, we have jurisdiction under Rule 307(a)(1) to consider the merits of the appeal. *Fricke*, 2021 IL App (5th) 200044, ¶ 19.

¶ 44                                    B. Mootness

¶ 45    We next must address another preliminary matter before reaching the merits of Steve's contentions regarding the order of protection. We must determine whether we should decline to review the issues presented on appeal pursuant to the mootness doctrine. In general, this court will not consider moot issues. *In re Robert S.*, 213 Ill. 2d 30, 45 (2004).

¶ 46    Although we have already found that we lack jurisdiction to consider the arguments raised with regard to the transfer orders, we must also observe that the issues Steve raises with regard to those orders are moot. These orders provided for the transfer of S.F. on specific dates. For instance, the June 17 order provided that Steve would transfer S.F. to Gina on June 18. After that transfer did not occur, the June 17 order was no longer in effect and was essentially replaced by the June 22 order, which itself was replaced by the subsequent orders. These orders explicitly stated they were temporary. The dates referenced in the orders have passed, and this court could not grant Steve any relief in relation to those orders. As such, a decision on the merits regarding these orders could not result in any relief to the prevailing party. Such a decision would essentially be an advisory opinion. *In re Barbara H.*, 183 Ill. 2d 482, 490 (1998). As a general rule, this court does not issue advisory opinions. *Id.* at 491.

¶ 47    Next, the order of protection also provides that it is temporary and is set to expire on January 31, 2022, before the merits of Steve's appeal could be adjudged by this court. However, in reviewing potentially moot issues raised pursuant to the Act, this court has applied the public

interest exception to the mootness doctrine. See *Hedrick-Koroll v. Bagley*, 352 Ill. App. 3d 590, 592 (2004); *Wilson v. Jackson*, 312 Ill. App. 3d 1156, 1162-63 (2000). Under that exception, this court may review otherwise moot issues if there is a substantial public or private question involved, an authoritative determination is needed for future guidance, and the issue is likely to recur. *Wilson*, 312 Ill. App. 3d at 1163. This court has noted that the Act addresses problems of public interest and that the purposes of the Act can only be achieved if courts properly apply its requirements. See *Whitten v. Whitten*, 292 Ill. App. 3d 780 (1997). Accordingly, we find that we may address Steve's contentions related to the order of protection only.

¶ 48                                    C. Order of Protection

¶ 49    Steve raises two arguments in contending that the court erred in entering the order of protection. First, Steve contends that the order represents an improper modification of the Allocation Judgment. Second, Steve asserts that the court erred in granting the order of protection because Gina improperly used the Act as a means to transfer custody where the court should have made custody determinations pursuant to the IMDMA.

¶ 50    We may easily dispose of Steve's first argument. As discussed, the order of protection did not modify the terms of the Allocation Judgment because it is a temporary order. Once the order of protection expires, the terms of the Allocation Judgment will once again control. The order of protection did not change the 50/50 parenting time provided in the Allocation Judgment and did not change the parties' joint decision-making responsibilities.

¶ 51    We do wish to briefly address one contention Steve raises in favor of his contention that both the transfer orders and the order of protection were improper modifications of the Allocation Judgment. Steve asserts that the court erred because it did not conduct an investigation into S.F.'s allegations of abuse and did not interview S.F. to determine why she did not want to be transferred

to Gina. We observe that Steve even filed a motion for the court to conduct an in-camera inspection of S.F. However, in denying that motion, the court stated that it had "no faith or understanding that the child would even be produced" for such an inspection. The court stated that it had previously ordered that S.F. be produced in court, but that had "failed to take place." The court denied the motion to inspect S.F. without prejudice. The court concluded that "[i]f and when the child is produced, that motion can be refiled by either party." Thus, the reason the court did not conduct an interview with S.F. was because Steve, who had physical possession of S.F. during this period, did not produce her to the court. We also note that although Steve represents that S.F. made allegations of abuse against Gina, the only allegations of abuse in the record are made by Steve against Gina, allegedly on S.F.'s behalf. Therefore, Steve cannot now complain that the court erred in failing to conduct an interview of S.F. where Steve failed to produce her in court as ordered.

¶ 52    In support of his second contention, Steve contends that it was improper for the court to use the Act to modify the Allocation Judgment and transfer custody to Gina. Steve asserts that Gina acknowledged that she sought the order of protection solely to effectuate the transfer orders and not for a proper purpose under the Act. Steve asserts that custody matters and visitation should have been resolved pursuant to the IMDMA.

¶ 53    We acknowledge that the primary purpose of the Act is to aid victims of domestic violence and prevent further abuse. *Sutherlin v. Sutherlin*, 363 Ill. App. 3d 691, 693 (2006) (citing 750 ILCS 60/102 (West 2004)). However, section 214(b)(5) of the Act specifically provides that a circuit court may enter an award of temporary child custody to the petitioner as a remedy under the Act.

750 ILCS 60/214(b)(5) (West 2020); *Sutherlin*, 363 Ill. App. 3d at 693[2] (citing 750 ILCS 60/214(b)(6) (West 2004), now 750 ILCS 60/214(b)(5) (West 2020)). Section 214(b)(5) provides:

"(b) Remedies and standards. The remedies to be included in an order of protection shall be determined in accordance with this Section and one of the following Sections, as appropriate: Section 217 on emergency orders, Section 218 on interim orders, and Section 219 on plenary orders.

\*\*\*

(5) Physical care and possession of the minor child. In order to protect the minor child from abuse, neglect, or unwarranted separation from the person who has been the minor child's primary caretaker, or to otherwise protect the well-being of the minor child, the court may do either or both of the following: (i) grant petitioner physical care or possession of the minor child, or both, or (ii) order respondent to return a minor child to, or not remove a minor child from, the physical care of a parent or person in loco parentis.

If a court finds, after a hearing, that respondent has committed abuse (as defined in Section 103) of a minor child, there shall be a rebuttable presumption that awarding physical care to respondent would not be in the minor child's best interest." 750 ILCS 60/214(b)(5) (West 2020).

Section 103 provides, in turn, that "abuse" is "physical abuse, harassment, intimidation of a dependent, interference with personal liberty or willful deprivation but does not include reasonable

---

[2]*Sutherlin* relied on a previous version of 750 ILCS 60/214(b) where subsection (b)(6) concerned "temporary legal custody." See 750 ILCS 60/214(b)(6) (West 2004). The current version of 750 ILCS 60/214(b) now includes a substantial similar subsection (b)(5), which concerns "Physical care and possession of the minor child." 750 ILCS 60/214(b)(5) (West 2020).

direction of a minor child by a parent or person in loco parentis." 750 ILCS 60/103(1) (West 2020).

Here, after conducting a hearing, the court found that Gina and S.F. had been victims of abuse under the Act. There was thus a rebuttable presumption that awarding physical care to Steve would not be in S.F.'s best interest.

¶ 54    Steve contends, however, that the court erred in awarding custody to Gina pursuant to the Act. In support of this contention, Steve relies on this court's decisions in *Radke ex rel. Radke v. Radke*, 349 Ill. App. 3d 264 (2004) and *In re Marriage of Potenza*, 2020 IL App (1st) 192454. We find that neither of these decisions support reversing the circuit court's order here.

¶ 55    In *Radke*, the trial court granted the mother a plenary order of protection restraining the father from "abusing harassing, intimidating or interfering with the personal liberty of the parties' daughter." *Radke*, 349 Ill. App. 3d at 264. On appeal, the father contended that the order of protection should be vacated because any action to restrict his visitation of the parties' daughter should have been part of the existing dissolution proceeding, rather than through an order of protection. *Id.* at 268. This court agreed finding that obtaining an order of protection was not the proper procedure for resolving child custody or visitation issues, and those issues should be resolved under the IMDMA. *Id.* at 269. The court observed that the mother admitted that she sought the order of protection to temporarily suspend the father's visitation. *Id.* The parties' child also indicated that the order of protection was sought so that she could visit her father only when she wanted to see him. *Id.* The court concluded that the Act was not the appropriate vehicle for resolving those issues. *Id.* Significantly, the court found that the Act was not a proper vehicle for resolving issues of custody because it found that the trial court erred in finding that abuse or harassment had occurred. *Id.* at 268. This court rejected the trial court's conclusion that the father's

restriction of the child's ability to use the phone while she was in his care constituted harassment under the Act. *Id.*

¶ 56 We find the circumstances in *Radke* distinguishable in several respects. First, the court analyzed the trial court's finding of abuse under an abuse of discretion standard. *Id.* at 267. However, after *Radke* was decided, the supreme court clarified that findings of abuse under the Act should be reversed only if they are against the manifest weight of the evidence. *Best v. Best*, 223 Ill. 2d 342, 350 (2006). "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *Id.* We give deference to the trial court because it is in the best position to observe the conduct and demeanor of the parties and witnesses. *Id.*

¶ 57 The Act defines harassment as "knowing conduct which is not necessary to accomplish a purpose that is reasonable under the circumstances; would cause a reasonable person emotional distress; and does cause emotional distress to the petitioner." 750 ILCS 60/103(7) (West 2020). The Act establishes a presumption that "improperly concealing a minor child from petitioner, repeatedly threatening to improperly remove a minor child of petitioner's from the jurisdiction or from the physical care of petitioner, repeatedly threatening to conceal a minor child from petitioner, or making a single such threat following an actual or attempted improper removal or concealment," causes emotional distress. 750 ILCS 60/103(7)(v) (West 2020).

¶ 58 Here, because Steve did not appear in court, Gina was the only person who testified at the hearing. Gina testified at length regarding her attempts to contact S.F., and the harassment that she experienced by Steve. Significantly, the court found that, based on the evidence presented, and the evidence it had heard since entering the Allocation Judgment in September 2020, that Steve, the only other person authorized by the Allocation Judgment to be in custody of S.F., did not even

have physical possession of S.F. The court found that Steve had concealed S.F. and had committed abuse against both S.F. and Gina. The trial court observed Gina during her testimony and concluded that her allegations of abuse were more likely true than not. *Id.* at 351. Indeed, Steve does not even challenge the court's findings of abuse and harassment on appeal.

¶ 59 We also note that unlike in *Radke*, Gina did not seek the order of protection for the sole purpose of transferring custody as Steve suggests. Instead, Gina testified that the transfer of custody was only "part" of the reason she sought the order of protection. Gina then testified regarding the private investigators Steve hired, and the surveillance devices he planted on her car and S.F.'s clothing. Gina testified that she sought the order of protection so that she could live a normal life free from harassment by Steve. The court found these allegations credible and we find no basis to disturb that judgment. The court specifically found that the circumstances described fell within the Act's definitions of abuse and harassment. 750 ILCS 60/103(1), (7) (West 2020). We cannot say that the court's conclusion was either unreasonable or arbitrary, or that the opposite conclusion was clearly evident. *Id.*

¶ 60 We further find Steve's reliance on *In re Marriage of Potenza*, 2020 IL App (1st) 192454 unpersuasive. In *Potenza*, the father filed a petition for an order of protection against the mother alleging that she had prevented him from seeing his children. *Id.* ¶ 20. The court entered the order *ex parte* that day and transferred custody to the father. *Id.* The father later filed an amended petition alleging that the mother had moved and refused to disclose her new address. *Id.* The court held a hearing on the amended petition where the father testified about several instances where the mother blocked his scheduled visits with the children. *Id.* Following the hearing, the court extended the order of protection and set it to remain in effect until it was vacated by court order. *Id.* ¶ 21. In a separate order, the court ruled that the father would have temporary custody of the minor children

pursuant to the Act. *Id.* As a basis for the orders, the court found that the mother harassed the father by "preventing Petitioner's parenting time." *Id.*

¶ 61    On appeal, the mother challenged the orders of protection that transferred temporary custody of the children to the father. *Id.* ¶ 52. This court found that although the evidence supported the trial court's finding that the mother harassed the father within the meaning of the Act, the court determined that an order of protection under the Act was not the proper procedure for resolving child custody or visitation issues. *Id.* ¶ 55-56. The court, relying on *Radke*, stated that the court should conduct a hearing pursuant to the IMDMA to determine the best interests of the children. *Id.* ¶ 57. The court therefore reversed the trial court's entry of the order of protection. *Id.*

¶ 62    We find the circumstances in *Potenza* distinguishable from the case at bar. The *Potenza* court appeared to be primarily concerned with the fact that the trial court did not consider the best interests of the children in entering the order of protection that changed the parties' custody arrangement. *Id.* However, As noted, where the trial court has found abuse of the minor child "there shall be a rebuttable presumption that awarding physical care to respondent would not be *in the minor child's best interest.*" (Emphasis added.) 750 ILCS 60/214(b)(5) (West 2020). Here, the trial court found both harassment and abuse under the Act, and Steve failed to rebut the presumption that awarding him physical care of S.F. would not be in S.F.'s best interests. We therefore find that the court did consider S.F.'s best interest in finding abuse, and temporarily suspending Steve's parenting time. Again, we observe that the circuit court's ruling was based, at least in part, on the evidence presented that Steve was not actually in the physical care of S.F., but rather S.F. was in the care of Steve's parents, who had no right to physical possession of S.F. under the Allocation Judgment. The court found that this constituted abuse because S.F. had been confined with a third party, and her personal liberties had been interfered with. The court's decision

to temporarily place the S.F. in Gina's care was within the remedies available to victims of abuse under the Act.

¶ 63    We also observe that the basis for the court's finding of harassment in *Potenza* was based solely on the mother's interference with the father's parenting time. Here, in contrast, the court made extensive findings regarding Steve's abuse, including concealing S.F. in the home of a third party, and restricting her physical liberties, and harassment, including improperly concealing S.F. Gina and Gina from S.F. We therefore find that the court did not err in entering the order of protection temporarily transferring custody of S.F. to Gina and suspending Steve's parenting time.

¶ 64                                     III. CONCLUSION

¶ 65    For the reasons stated, we affirm the judgment of the circuit court.

¶ 66    Affirmed.